## MUSKRAT v. UNITED STATES.
## BROWN AND GRITTS v. UNITED STATES.

APPEALS FROM THE COURT OF CLAIMS.

Nos. 330, 331. Argued November 30 and December 1, 2, 1910.—Decided January 23, 1911.

The rule laid down in *Heyburn's Case*, 2 Dall. 409, that neither the legislative nor the executive branch of the Government of the United States can assign to the judicial branch any duties other than those that are properly judicial, to be performed in a judicial manner, applied; and *held*, that it is beyond the power of Congress to provide for a suit of this nature to be brought in the Court of

Claims with an appeal to this court to test the constitutionality of prior acts of Congress, such a suit not being a case or controversy within the meaning of the Constitution.

From its earliest history this court has consistently declined to exercise any powers other than those which are strictly judicial in their nature.

Under the Constitution of the United States the exercise of judicial power is limited to cases and controversies.

case or controversy, in order that the judicial power of the United States may be exercised thereon, implies the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication. *Chisholm* v. *Georgia*, 2 Dall. 431.

This court has no veto power on legislation enacted by Congress; and its right to declare an act of Congress unconstitutional can only be exercised when a proper case between opposing parties is submitted for determination. *Marbury* v. *Madison*, 1 Cranch, 137.

The determination by the Court of Claims, and on appeal by this court, of the constitutional validity of an act of Congress in a suit brought by authority of a subsequent act of Congress clothing such courts with jurisdiction for the avowed purpose of settling such question with provision for payment of expenses of the suit in certain contingencies out of funds in the Treasury of the United States, is not within the appellate jurisdiction conferred by the Constitution upon this court; such a suit is not a case or controversy to which the judicial power extends, nor would such a judgment conclude private parties in actual litigation.

That part of the act of March 1, 1907, c. 2285, 34 Stat. 1015, 1028, which requires of this court action in its nature not judicial within the meaning of the Constitution, exceeds the limitation of legislative authority and is unconstitutional, and the suits brought thereunder are dismissed for want of jurisdiction.

This court cannot be required to decide cases over which it has not jurisdiction because other cases are pending involving the same point of law; to do so would require it to give opinions in the nature of advice concerning legislative action.

An act of Congress, conferring jurisdiction on the Court of Claims and on this court on appeal, testing the constitutionality of prior acts of Congress will not be sustained as to the jurisdiction of the Court of Claims alone if it cannot be also sustained as to this court.

44 Court of Claims, 137, reversed with directions to dismiss the suit.

THE facts, which involve the constitutionality and con-

struction of certain acts of Congress relating to the distribution and allotment of lands and funds of the Cherokee Indians, are stated in the opinion.

*Mr. John J. Hemphill, Mr. William H. Robeson* and *Mr. Daniel B. Henderson*, with whom *Mr. Frank J. Boudinot* was on the brief, for appellants.

*Mr. Wade H. Ellis*, Special Assistant to the Attorney General, with whom *Mr. Henry E. Colton*, Special Assistant to the Attorney General, was on the brief, for the United States.

*Mr. W. W. Hastings* for the Cherokee Nation.

*Mr. S. T. Bledsoe* and *Mr. Evans Browne* submitted a brief, by leave of the court, as *amici curiæ*, on behalf of certain full blood Choctaw and Chickasaw allottees.

MR. JUSTICE DAY delivered the opinion of the court.

These cases arise under an act of Congress undertaking to confer jurisdiction upon the Court of Claims, and upon this court on appeal, to determine the validity of certain acts of Congress hereinafter referred to.

Case No. 330 was brought by David Muskrat and J. Henry Dick in their own behalf and in behalf of others in a like situation to determine the constitutional validity of the act of Congress of April 26, 1906, c. 1876, 34 Stat. 137, as amended by the act of June 21, 1906, c. 3504, 34 Stat. 325 *et seq.*, and to have the same declared invalid in so far as the same undertook to increase the number of persons entitled to share in the final distribution of lands and funds of the Cherokees beyond those enrolled on September 1, 1902, in accordance with the act of Congress passed July 1, 1902, c. 1375, 32 Stat. 716–720–721. The

acts subsequent to that of July 1, 1902, have the effect to increase the number of persons entitled to participate in the division of the Cherokee lands and funds, by permitting the enrollment of children who were minors living on March 4, 1906, whose parents had theretofore been enrolled as members of the Cherokee tribe or had applications pending for that purpose.

Case No. 331 was brought by Brown and Gritts on their own behalf and on behalf of other Cherokee citizens having a like interest in the property allotted under the act of July 1, 1902, c. 1368, 32 Stat. 710. Under this act, Brown and Gritts received allotments. The subsequent act of March 11, 1904, c. 505, 33 Stat. 65, empowered the Secretary of the Interior to grant rights of way for pipe lines over lands allotted to Indians under certain regulations. Another act, that of April 26, 1906, c. 1876, 34 Stat. 137, purported to extend to a period of twenty-five years the time within which full-blooded Indians of the Cherokee, Choctaw, Chickasaw, Creek and Seminole tribes were forbidden to alienate, sell, dispose of or encumber certain of their lands.

The object of the petition of Brown and Gritts was to have the subsequent legislation of 1904 and 1906 declared to be unconstitutional and void, and to have the lands allotted to them under the original act of July 1, 1902, adjudged to be theirs free from restraints upon the rights to sell and convey the same. From this statement it is apparent that the purpose of the proceedings instituted in the Court of Claims and now appealed to this court is to restrain the enforcement of such legislation subsequent to the act of July 1, 1902, upon the ground that the same is unconstitutional and void. The Court of Claims sustained the validity of the acts and dismissed the petitions. 44 C. Cls. 137, 283.

These proceedings were begun under the supposed authority of an act of Congress passed March 1, 1907 (a part

of the Indian appropriation bill), c. 2285, 34 Stat. 1015, 1028. As that legislation is important in this connection so much of the act as authorized the beginning of these suits is here inserted in full:

"That William Brown and Levi B. Gritts, on their own behalf and on behalf of all other Cherokee citizens, having like interests in the property allotted under the act of July first, nineteen hundred and two, entitled 'An act to provide for the allotment of lands of the Cherokee Nation, for the disposition of townsites therein, and for other purposes,' and David Muskrat and J. Henry Dick, on their own behalf, and on behalf of all Cherokee citizens enrolled as such for allotment as of September first, nineteen hundred and two, be, and they are hereby, authorized and empowered to institute their suits in the Court of Claims to determine the validity of any acts of Congress passed since the said act of July first, nineteen hundred and two, in so far as said acts, or any of them, attempt to increase or extend the restrictions upon alienation, encumbrance, or the right to lease the allotments of lands of Cherokee citizens, or to increase the number of persons entitled to share in the final distribution of lands and funds of the Cherokees beyond those enrolled for allotment as of September first, nineteen hundred and two, and provided for in the said act of July first, nineteen hundred and two.

"And jurisdiction is hereby conferred upon the Court of Claims, with the right of appeal, by either party, to the Supreme Court of the United States, to hear, determine, and adjudicate each of said suits.

"The suits brought hereunder shall be brought on or before September first, nineteen hundred and seven, against the United States as a party defendant, and, for the speedy disposition of the questions involved, preference shall be given to the same by said courts, and by the Attorney General, who is hereby charged with the defense of said suits.

"Upon the rendition of final judgment by the Court of Claims or the Supreme Court of the United States denying the validity of any portion of the said acts authorized to be brought into question, in either or both of said cases, the Court of Claims shall determine the amount to be paid the attorneys employed by the above-named parties in the prosecution thereof for services and expenses, and shall render judgment therefor, which shall be paid out of the funds in the United States Treasury belonging to the beneficiaries under the said act of July first, nineteen hundred and two."

This act is the authority for the maintenance of these two suits.

The first question in these cases, as in others, involves the jurisdiction of this court to entertain the proceeding, and that depends upon whether the jurisdiction conferred is within the power of Congress, having in view the limitations of the judicial power as established by the Constitution of the United States.

Section 1 of Article III of the Constitution provides:

"The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish."

Section 2 of the same Article provides:

"The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;—to all cases affecting ambassadors, other public ministers, and consuls;—to all cases of admiralty and maritime jurisdiction;—to controversies to which the United States shall be a party; to controversies between two or more States;—between a State and citizens of another State;—between citizens of different States;—between citizens of the same State claiming lands under grants of different States, and between a State, or the citizens thereof, and foreign states, citizens or subjects."

It will serve to elucidate the nature and extent of the judicial power thus conferred by the Constitution to note certain instances in which this court has had occasion to examine and define the same. As early as 1792, an act of Congress, March 23, 1792, c. 11, 1 Stat. 243, was brought to the attention of this court, which undertook to provide for the settlement of claims of widows and orphans barred by the limitations theretofore established regulating claims to invalid pensions. The act was not construed by this court, but came under consideration before the then Chief Justice and another Justice of this court and the District Judge, and their conclusions are given in the margin of the report of *Hayburn's Case*, 2 Dall. 409. The act undertook to devolve upon the Circuit Court of the United States the duty of examining proofs, of determining what amount of the monthly pay would be equivalent to the disability ascertained, and to certify the same to the Secretary of War, who was to place the names of the applicants on the pension list of the United States in conformity thereto, unless he had cause to suspect imposition or mistake, in which event he might withhold the name of the applicant and report the same to Congress.

In the note to the report of the case in 2 Dall. it appeared that Chief Justice Jay, Mr. Justice Cushing and District Judge Duane unanimously agreed:

"That by the Constitution of the United States, the government thereof is divided into three distinct and independent branches, and that it is the duty of each to abstain from, and to oppose, encroachments on either.

"That neither the legislative nor the executive branches can constitutionally assign to the judicial any duties but such as are properly judicial, and to be performed in a judicial manner.

"That the duties assigned to the Circuit Courts, by this act, are not of that description, and that the act itself does not appear to contemplate them as such; inasmuch as

it subjects the decisions of these courts, made pursuant to those duties, first to the consideration and suspension of the Secretary of War, and then to the revision of the legislature; whereas by the Constitution, neither the Secretary of War, nor any other executive officer, nor even the legislature, are authorized to sit as a court of errors on the judicial acts or opinions of this court."

A further history of the case—and of another brought under the same act but unreported—will be found in *United States* v. *Ferreira*, 13 How. 40, in which the opinion of the court was by the Chief Justice, and the note by him on page 52 was inserted by order of the court. Concluding that note it was said:

"In the early days of the Government, the right of Congress to give original jurisdiction to the Supreme Court, in cases not enumerated in the Constitution, was maintained by many jurists, and seems to have been entertained by the learned judges who decided Todd's case. But discussion and more mature examination has settled the question otherwise; and it has long been the established doctrine, and we believe now assented to by all who have examined the subject, that the original jurisdiction of this court is confined to the cases specified in the Constitution, and that Congress cannot enlarge it. In all other cases its power must be appellate."

In the *Ferreira case* this court determined the effect of proceedings under an act of Congress, authorizing the District Judge of the United States for the Northern District of Florida to receive and adjudicate claims for losses for which this Government was responsible under the treaty of 1819 between the United States and Spain; decisions in favor of claimants, together with evidence given in connection therewith, to be reported to the Secretary of the Treasury, who, being satisfied that the same were just and equitable and within the treaty, was to pay the amount thereof. It was held that an award of the Dis-

trict Judge under that act was not the judgment of a court and did not afford a basis of appeal to this court.

In 1793, by direction of the President, Secretary of State Jefferson addressed to the Justices of the Supreme Court a communication soliciting their views upon the question whether their advice to the executive would be available in the solution of important questions of the construction of treaties, laws of nations and laws of the land, which the Secretary said were often presented under circumstances which "*do not give a cognizance of them to the tribunals of the country.*" The answer to the question was postponed until the subsequent sitting of the Supreme Court, when Chief Justice Jay and his associates answered to President Washington that in consideration of the lines of separation drawn by the Constitution between the three departments of government, and being judges of a court of last resort, afforded strong arguments against the propriety of extrajudicially deciding the questions alluded to, and expressing the view that the power given by the Constitution to the President of calling on heads of departments for opinions "seems to have been purposely, as well as expressly, united to the executive departments." Correspondence & Public Papers of John Jay, vol. 3, p. 486.

The subject underwent a complete examination in the case of *Gordon* v. *United States*, reported in an appendix to 117 U. S. 697, in which the opinion of Mr. Chief Justice Taney, prepared by him and placed in the hands of the clerk, is published in full. It is said to have been his last judicial utterance, and the whole subject of the nature and extent of the judicial power conferred by the Constitution is treated with great learning and fullness. In that case an act of Congress was held invalid which undertook to confer jurisdiction upon the Court of Claims and thence by appeal to this court, the judgment, however, not to be paid until an appropriation had been estimated therefor

by the Secretary of the Treasury; and, as was said by the Chief Justice, the result was that neither court could enforce its judgment by any process, and whether it was to be paid or not depended on the future action of the Secretary of the Treasury and of Congress. "The Supreme Court," says the Chief Justice, "does not owe its existence or its powers to the legislative department of the government. It is created by the Constitution, and represents one of the three great divisions of power in the Government of the United States, to each of which the Constitution has assigned its appropriate duties and powers, and made each independent of the other in performing its appropriate functions. The power conferred on this court is exclusively judicial, and it cannot be required or authorized to exercise any other."

Concluding his discussion of the subject, the Chief Justice said, after treating of the powers of the different branches of the Government, and laying emphasis upon the independence of the judicial power as established under our Constitution, p. 706: "These cardinal principles of free government had not only been long established in England, but also in the United States from the time of their earliest colonization, and guided the American people in framing and adopting the present Constitution. And it is the duty of this court to maintain it unimpaired as far as it may have the power. And while it executes firmly all the judicial powers entrusted to it, the court will carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to it by the Constitution."

At the last term of the court, in the case of *Baltimore & Ohio R. R. Co.* v. *Interstate Commerce Commission,* 215 U. S. 216, this court declined to take jurisdiction of a case which undertook to extend its appellate power to the consideration of a case in which there was no judgment in the court below. In that case former cases were reviewed

by Mr. Chief Justice Fuller, who spoke for the court, and the requirement that this court adhere strictly to the jurisdiction, original and appellate, conferred upon it by the Constitution, was emphasized and enforced. It is therefore apparent that from its earliest history this court has consistently declined to exercise any powers other than those which are strictly judicial in their nature.

It therefore becomes necessary to inquire what is meant by the judicial power thus conferred by the Constitution upon this court, and with the aid of appropriate legislation upon the inferior courts of the United States. "Judicial power," says Mr. Justice Miller in his work on the Constitution, "is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." Miller on the Constitution, 314.

As we have already seen by the express terms of the Constitution, the exercise of the judicial power is limited to "cases" and "controversies." Beyond this it does not extend, and unless it is asserted in a case or controversy within the meaning of the Constitution, the power to exercise it is nowhere conferred.

What, then, does the Constitution mean in conferring this judicial power with the right to determine "cases" and "controversies"? A "case" was defined by Mr. Chief Justice Marshall as early as the leading case of *Marbury* v. *Madison,* 1 Cranch, 137, to be a suit instituted according to the regular course of judicial procedure. And what more, if anything, is meant in the use of the term "controversy"? That question was dealt with by Mr. Justice Field, at the circuit, in the case of *In re Pacific Railway Commission,* 32 Fed. Rep. 241, 255. Of these terms that learned Justice said:

"The judicial article of the Constitution mentions cases and controversies. The term 'controversies,' if distinguishable at all from 'cases,' is so in that it is less compre-

hensive than the latter, and includes only suits of a civil nature. *Chisholm* v. *Georgia*, 2 Dall. 431, 432; 1 Tuck. Bl. Comm. App. 420, 421. By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication."

The power being thus limited to require an application of the judicial power to cases and controversies, is the act which undertook to authorize the present suits to determine the constitutional validity of certain legislation within the constitutional authority of the court? This inquiry in the case before us includes the broader question, When may this court, in the exercise of the judicial power, pass upon the constitutional validity of an act of Congress? That question has been settled from the early history of the court, the leading case on the subject being *Marbury* v. *Madison, supra.*

In that case Chief Justice Marshall, who spoke for the court, was careful to point out that the right to declare an act of Congress unconstitutional could only be exercised when a proper case between opposing parties was submitted for judicial determination; that there was no general veto power in the court upon the legislation of Congress; and that the authority to declare an act unconstitutional sprung from the requirement that the court, in administering the law and pronouncing judgment between the parties to a case, and choosing between the requirements of the fundamental law established by the people and embodied in the Constitution and an act of the agents

of the people, acting under authority of the Constitution, should enforce the Constitution as the supreme law of the land. The Chief Justice demonstrated, in a manner which has been regarded as settling the question, that with the choice thus given between a constitutional requirement and a conflicting statutory enactment, the plain duty of the court was to follow and enforce the Constitution as the supreme law established by the people. And the court recognized, in *Marbury* v. *Madison* and subsequent cases, that the exercise of this great power could only be invoked in cases which came regularly before the courts for determination, for, said the Chief Justice, in *Osborn* v. *Bank of United States*, 9 Wheat. 819, speaking of the third Article of the Constitution conferring judicial power:

"This clause enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws, and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares that the judicial power shall extend to all cases arising under the Constitution, laws, and treaties of the United States."

Again, in the case of *Cohens* v. *Virginia*, 6 Wheat. 264, Chief Justice Marshall, amplifying and reasserting the doctrine of *Marbury* v. *Madison*, recognized the limitations upon the right of this court to declare an act of Congress unconstitutional, and granting that there might be instances of its violation which could not be brought within the jurisdiction of the courts, and referring to a grant by a State of a patent of nobility as a case of that class, and conceding that the court would have no power to annul such a grant, said, p. 405:

"This may be very true; but by no means justifies the inference drawn from it. The article does not extend the

judicial power to every violation of the Constitution which may possibly take place, but to 'a case in law or equity' in which a right under such law is asserted in a court of justice. If the question cannot be brought into a court, then there is no case in law or equity, and no jurisdiction is given by the words of the article. But if, in any controversy depending in a court, the cause should depend on the validity of such a law, that would be a case arising under the Constitution, to which the judicial power of the United States would extend. The same observation applies to the other instances with which the counsel who opened the cause has illustrated this argument. Although they show that there may be violations of the Constitution of which the courts can take no cognizance, they do not show that an interpretation more restrictive than the words themselves import ought to be given to this article. They do not show that there can be 'a *case* in law or equity' arising under the Constitution, to which the judicial power does not extend."

See also in this connection *Chicago & Grand Trunk Railway Company* v. *Wellman*, 143 U. S. 339. On page 345 of the opinion in that case the result of the previous decisions of this court was summarized in these apposite words by Mr. Justice Brewer, who spoke for the court:

"Whenever, in pursuance of an honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any legislature, State or Federal, and the decision necessarily rests on the competency of the legislature to so enact, the court must, in the exercise of its solemn duties, determine whether the act be constitutional or not; but such an exercise of power is the ultimate and supreme function of courts. It is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy between individuals. It never was the thought that, by means of a friendly suit, a

party beaten in the legislature could transfer to the courts
an inquiry as to the constitutionality of the legislative
act.''

Applying the principles thus long settled by the deci-
sions of this court to the act of Congress undertaking to
confer jurisdiction in this case, we find that William Brown
and Levi B. Gritts, on their own behalf and on behalf of
all other Cherokee citizens having like interest in the prop-
erty allotted under the act of July 1, 1902, and David
Muskrat and J. Henry Dick, for themselves and repre-
sentatives of all Cherokee citizens enrolled as such for
allotment as of September 1, 1902, are authorized and em-
powered to institute suits in the Court of Claims to deter-
mine the validity of acts of Congress passed since the act
of July 1, 1902, in so far as the same attempt to increase
or extend the restrictions upon alienation, encumbrance,
or the right to lease the allotments of lands of Cherokee
citizens, or to increase the number of persons entitled to
share in the final distribution of lands and funds of the
Cherokees beyond those enrolled for allotment as of Sep-
tember 1, 1902, and provided for in the said act of July 1,
1902.

The jurisdiction was given for that purpose first to the
Court of Claims and then upon appeal to this court. That
is, the object and purpose of the suit is wholly comprised
in the determination of the constitutional validity of cer-
tain acts of Congress; and furthermore, in the last para-
graph of the section, should a judgment be rendered in the
Court of Claims or this court, denying the constitutional
validity of such acts, then the amount of compensation
to be paid to attorneys employed for the purpose of test-
ing the constitutionality of the law is to be paid out of
funds in the Treasury of the United States belonging to
the beneficiaries, the act having previously provided that
the United States should be made a party and the At-
torney General be charged with the defense of the suits.

It is therefore evident that there is neither more nor less in this procedure than an attempt to provide for a judicial determination, final in this court, of the constitutional validity of an act of Congress. Is such a determination within the judicial power conferred by the Constitution, as the same has been interpreted and defined in the authoritative decisions to which we have referred? We think it is not. That judicial power, as we have seen, is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction. The right to declare a law unconstitutional arises because an act of Congress relied upon by one or the other of such parties in determining their rights is in conflict with the fundamental law. The exercise of this, the most important and delicate duty of this court, is not given to it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and a law purporting to be enacted within constitutional authority, but in fact beyond the power delegated to the legislative branch of the Government. This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented in a "case" or "controversy," to which, under the Constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant to this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against the Government, or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation, in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the Government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful char-

acter of the legislation in question. Such judgment will not conclude private parties, when actual litigation brings to the court the question of the constitutionality of such legislation. In a legal sense the judgment could not be executed, and amounts in fact to no more than an expression of opinion upon the validity of the acts in question. Confining the jurisdiction of this court within the limitations conferred by the Constitution, which the court has hitherto been careful to observe, and whose boundaries it has refused to transcend, we think the Congress, in the act of March 1, 1907, exceeded the limitations of legislative authority, so far as it required of this court action not judicial in its nature within the meaning of the Constitution.

Nor can it make any difference that the petitioners had brought suits in the Supreme Court of the District of Columbia to enjoin the Secretary of the Interior from carrying into effect the legislation subsequent to the act of July 1, 1902, which suits were pending when the jurisdictional act here involved was passed. The latter act must depend upon its own terms and be judged by the authority which it undertakes to confer. If such actions as are here attempted, to determine the validity of legislation, are sustained, the result will be that this court, instead of keeping within the limits of judicial power and deciding cases or controversies arising between opposing parties, as the Constitution intended it should, will be required to give opinions in the nature of advice concerning legislative action, a function never conferred upon it by the Constitution, and against the exercise of which this court has steadily set its face from the beginning.

The questions involved in this proceeding as to the validity of the legislation may arise in suits between individuals, and when they do and are properly brought before this court for consideration they, of course, must be determined in the exercise of its judicial functions. For

the reasons we have stated, we are constrained to hold that these actions present no justiciable controversy within the authority of the court, acting within the limitations of the Constitution under which it was created. As Congress, in passing this act as a part of the plan involved, evidently intended to provide a review of the judgment of the Court of Claims in this court, as the constitutionality of important legislation is concerned, we think the act cannot be held to intend to confer jurisdiction on that court separately considered. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 565; *Employers' Liability Cases*, 207 U. S. 463.

*The judgments will be reversed and the cases remanded to the Court of Claims, with directions to dismiss the petitions for want of jurisdiction.*