**UNITED STATES of America**

v.

**Hector DIAZ and Oscar Zubiaga.**

**Crim. No. 87–00159.**

United States District Court,
S.D. Alabama, S.D.

May 11, 1988.

Willie J. Huntley, Jr. and Gloria Bedwell, U.S. Atty's Office, Mobile, Ala., for U.S.

Gary L. Armstrong, Spanish Fort, Ala., for defendant Diaz.

John C. Brutkiewicz, Mobile, Ala., for defendant Zubiaga.

## ORDER

HOWARD, District Judge.

This cause comes before the Court on a motion by the defendants, Hector Diaz and Oscar Zubiaga, to invalidate the new federal sentencing guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984. The defendants were found guilty by a jury on January 25, 1988, of violating 21 U.S.C. § 963, 21 U.S.C. § 952(a), 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2, and are presently incarcerated awaiting sentencing. The defendants maintain that the guidelines are invalid for two reasons. First, the Sentencing Commission, which exercised legislative and executive powers in promulgating the guidelines, is improperly located in the judicial branch, violating the doctrine of separation of powers. Secondly, the Sentencing Reform Act of 1984 unconstitutionally mandates the service of at least three Article III judges on the Commission, also violating separation of powers principles. For the reasons that follow, the Court agrees that the portions of the Sentencing Reform Act establishing the Sentencing Commission and authorizing its work are unconstitutional and that the sentencing guidelines, promulgated by the Commission, are invalid.

### I. The Commission and the Guidelines

The Sentencing Commission was established under the Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 211, 1984 U.S. Code Cong. & Ad.News (98 Stat.) 1987. This act constitutes chapter II of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98–473, Title II, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1976. The relevant portions of the Sentencing Reform Act, establishing the Sentencing Commission, are codified at 28 U.S.C. §§ 991–998.

The act establishes the Commission as an independent commission in the judicial branch of the government. 28 U.S.C. § 991(a). The Commission is composed of seven voting members, at least three of whom shall be federal judges. *Id.* Members of the Commission are appointed by the President and may be removed by him for neglect of duty, malfeasance in office or for other good cause shown. *Id.*

The Commission is responsible for establishing "sentencing policies and practices" for the federal criminal justice system. 28 U.S.C. § 991(b)(1). Specifically, the Commission is authorized to promulgate a set of guidelines to be used by federal courts to determine sentences to be imposed in criminal cases. 29 U.S.C. § 994(a)(1). The act enumerates a substantial list of factors that either shall or shall not be considered in promulgating the guidelines. 28 U.S.C. § 994(b)-(n).

The Commission has, in fact, promulgated a set of guidelines, which became effective for all crimes committed after November 1, 1987. The term "guidelines" is perhaps a misnomer, for federal judges must impose sentences within the ranges described by the guidelines unless special circumstances exist that were not adequately considered by the Commission. 18 U.S.C. § 3553(b). Thus, the guidelines, by prescribing sentences within narrow ranges for given crimes under given circumstances, substantially restrict the traditional discretion invested in judges in the sentencing process.

### II. Placement of the Commission in the Judiciary

■ The defendants' objections to the creation of a commission in the judiciary exercising executive and legislative powers, and the service of judges on such a commission, raises two distinct but related questions. First, to what extent can executive or legislative powers be delegated to the judiciary? Secondly, to what extent may active judges serve on bodies exercising executive or legislative powers, regardless of where in the government the bodies

are located? These questions will be addressed in turn.

Under the doctrine of separation of powers, our government is composed of three separate but coequal branches. As a general rule, "the Legislature cannot exercise either executive or judicial power; the executive cannot exercise either legislative or judicial power; the judiciary cannot exercise either executive or legislative power." *Springer v. Philippine Islands,* 277 U.S. 189, 201–02, 48 S.Ct. 480, 482, 72 L.Ed. 845 (1928). *See also J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928). With respect to the judiciary, James Madison opined:

> Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, and *the judge* would then be *the legislator.* Were it joined to the executive power, *the judge* might behave with all the violence of *an oppressor.*

The Federalist No. 47, p. 299 (G.P. Putnam's Sons ed. 1908).

The Supreme Court, however, has recognized that "the separate powers were not intended to operate with absolute independence." *United States v. Nixon,* 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974). As Justice Jackson stated in a concurring opinion in *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952):

> While the Constitution diffuses power the better to secure liberty, it also contemplated that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches sepa-

rateness but interdependence, autonomy but reciprocity.

Thus, the Supreme Court has consistently upheld delegations of legislative authority by Congress to the executive branch or to agencies independent of any branch, provided that Congress articulates an "intelligible principle" to which the agency is directed to conform. *National Cable Television Association, Inc. v. United States,* 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974); *see also Yakus v. United States,* 321 U.S. 414, 426–27, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944) (cases cited therein).[1]

Nevertheless, the Supreme Court has been far less inclined to permit the delegation of executive or legislative authority to the judiciary. In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Court acknowledged that "executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Art. III of the Constitution." *Id.* at 123, 96 S.Ct. at 684 (citing *United States v. Ferreira,* 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1852); *Hayburn's Case,* 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1892)). More recently, relying on the language in *Buckley,* the Court of Appeals for the District of Columbia Circuit struck down the Ethics in Government Act because a special Article III court under the act was invested with the executive responsibilities of appointing and supervising an independent counsel with prosecutorial responsibilities. *In re Sealed Case,* 838 F.2d 476 (D.C.Cir.1988). As the court noted, "[O]f the three branches, it is the role of the judiciary that the Constitution most clearly and tightly confines within narrow borders." *Id.* at 516.

---

1. The Supreme Court has invalidated delegations of legislative authority as overly broad or expansive only twice. *See Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). Delegations are invalidated as overbroad "[o]nly if ... there is an absence of standards ... so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed...." *Yakus v. United States,* 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944).

The defendants in this case have not argued that Congress' delegation to the Commission is overbroad or unprincipled, so this Court will not address that issue. The Court notes, however, that the courts that have considered the issue have concluded that Congress provided sufficient guidance to the Commission under the Sentencing Reform Act to sustain the delegation. *See, e.g., United States v. Arnold,* 678 F.Supp. 1463 (S.D.Cal.1988); *United States v. Ruiz–Villanvera,* 680 F.Supp. 1411 (S.D.Cal. 1988); and *United States v. Chambless,* 680 F.Supp. 793 (E.D.La.1988).

The judicial power has traditionally been limited to deciding "cases" or "controversies". U.S. Const. art. III, § 2. The Supreme Court has described the judicial function as "the duty of interpreting and applying (laws) in cases properly brought before the courts." *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). The courts "determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." *Muskrat v. United States*, 219 U.S. 346, 361, 31 S.Ct. 250, 255, 55 L.Ed. 246 (1911). Federal courts must "carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to [them] by the Constitution." *Id.* at 355, 31 S.Ct. at 253 (citation omitted).

The Sentencing Reform Act improperly delegates to the judiciary powers that belong to the legislature. The Act establishes the Sentencing Commission as an independent commission within the judiciary and authorizes the commission to establish sentencing policies and practices and promulgate sentencing guidelines to be applied in federal courts nationwide. The task of promulgating the guidelines is essentially an administrative rulemaking task, legislative in nature. The Supreme Court has traditionally referred to administrative rulemaking as a "quasi-legislative" process. *See Humphrey's Executor v. United States*, 295 U.S. 602, 628, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935); *Buckley*, 424 U.S. at 133, 96 S.Ct. at 688–89. More recently, the Court has been inclined to treat administrative rulemaking under authority delegated by Congress as a proper function of the executive. *See Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 953 n. 16, 103 S.Ct. 2764, 2785 n. 16, 77 L.Ed.2d 317 (1983). Whether performed by the legislature or the executive, however, administrative rulemaking is essentially lawmaking, which is not a proper function of the judiciary.

The Supreme Court, in *Keller v. Potomac Electric Power Co.*, 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731 (1923), has compared the judicial and legislative functions as follows:

A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. *Id.* at 440–41, 43 S.Ct. at 448 (quoting *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)).

In promulgating the sentencing guidelines, the Commission looked to the future and changed existing conditions by making a new set of rules, the sentencing guidelines, to be applied to nearly all federal criminal proceedings across the nation. The primary function of the Commission, the promulgation of the guidelines, is clearly "quasi-legislative" in nature. The work of the Commission does not involve the addressing of specific "cases" or "controversies" within the meaning of Article III. Therefore, in performing legislative tasks as part of the judiciary, the Commission's promulgation of the sentencing guidelines was unconstitutional.

In attempting to defend itself and its guidelines, the Commission argues that the guidelines are essentially procedural rules within the authority of the judiciary to promulgate. This Court acknowledges the authority of the judiciary to promulgate procedural rules affecting the internal operation of the courts. *See Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43, 6 L.Ed. 253 (1825); *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941); *Chandler v. Judicial Council*, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970); *In re Certain Complaints*, 783 F.2d 1488, 1503–05 (11th Cir.), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986). As the Supreme Court in *Sibbach* stated:

Congress has undoubted power to regulate the practice and procedure of the federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not

inconsistent with the statutes or Constitution of the United States.

312 U.S. at 9–10, 61 S.Ct. at 424.

The guidelines, however, are not just procedural rules. Their purpose is not merely to promote "the effective and expeditious administration of the business of the courts...." *Chandler*, 398 U.S. at 86 n. 7, 90 S.Ct. at 1654 n. 7. The guidelines not only regulate how defendants are sentenced procedurally, but they essentially determine what sentences defendants will receive. The Supreme Court has already held that Florida's sentencing guidelines are substantive in nature for ex post facto purposes because they affect the "quantum of punishment" and must be applied under all but exceptional circumstances. *Miller v. Florida*, — U.S. ——, 107 S.Ct. 2446, 2453–54, 96 L.Ed.2d 351 (1987). There appears to be no significant difference between the federal guidelines and Florida's guidelines in those respects. Therefore, the promulgation of the guidelines amounts to the passage of substantive legislation, an activity in which the judiciary cannot constitutionally involve itself.

### III. Judges on the Committee

■ The Department of Justice argues that the Sentencing Commission should be treated as an executive commission or an independent commission, free of all three branches of government. In view of the plain statutory intent of Congress to place the Commission in the judiciary, the Court declines to rewrite the Act and move the Commission to another branch of government. The Court notes, however, that even if the Commission had not been placed in the judiciary, the mandatory service of Article III judges on the Commission would be unconstitutional.

The Commission argues that there is no constitutional impediment to judges serving as commissioners in their individual capacities and performing non-adjudicative roles. The Commission interprets cases such as *United States v. Ferreira* and *Hayburn's Case, supra,* as limiting the imposition of non-adjudicatory duties only with respect to the judiciary as a whole or to judges acting in their adjudicatory capacities.

As noted above, the statute establishing the Commission mandates the service on the Commission of at least three Article III judges:

> The President ... shall appoint the voting members of the Commission, by and with the advice and consent of the Senate.... At least three of the members shall be Federal judges selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States.

28 U.S.C. § 991(a).

The Court is fully cognizant "that the Constitution by no means contemplates total separation of the[ ] three essential branches of Government." *Buckley v. Valeo*, 424 U.S. at 121, 96 S.Ct. at 683. Indeed, the "view [that] the separation of powers [doctrine] ... requires[s] three airtight department of government" is "archaic". *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790 (1977). *Accord In re the President's Commission on Organized Crime Subpoena of Nicodemo Scarfo*, 783 F.2d 370, 378 (3d Cir.1986) ("[T]he Constitution does not contemplate that the three branches of government shall exist in hermetically-sealed compartments, uncooperative with, and oblivious to the activities of the others.").

Regarding the other end of the separation of powers continuum, the United States Supreme Court "has held that *executive* or *administrative duties* of a *nonjudicial nature* may not be *imposed* on judges holding office under Art. III of the Constitution." *Buckley*, 424 U.S. at 123, 96 S.Ct. at 684 (emphasis added) (citing *United States v. Ferreira*, 54 U.S. (13 How.) 40, 14 L.Ed. 42 (1852) and *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792). The Commission's interpretation (noted above) of *Hayburn's Case* and *Ferreira* cannot be squared with the quoted language from *Buckley*. The Eleventh Circuit Court of Appeals in *In re President's Commission on Organized Crime (Scaduto)*, 763 F.2d 1191 (11th Cir.1985),

concluded that "these cases offer strong support for the proposition that conferring non-judicial functions on members of the judiciary may raise separation of powers problems." *Scaduto*, 763 F.2d at 1196 (referring to *Hayburn's Case, Ferreira,* and *Hobson v. Hansen,* 265 F.Supp. 902 (D.D.C. 1967) (three judge court)). This Court is of the opinion that *quasi-legislative* administrative rulemaking "*duties* of a *non-judicial* nature may not be imposed on judges holding office under Article III of the Constitution."

However, because no case has expressly reached this conclusion, this Court will apply the functional analysis test as set forth by the Supreme Court in *Nixon v. Administrator of General Services,* 433 U.S. at 443, 97 S.Ct. at 2790: "In determining whether [Article III judges can be required to participate on a commission to which quasi-legislative administrative rulemaking tasks have been delegated], the proper inquiry focuses on the extent to which it prevents the [Judicial] Branch from accomplishing its constitutionally assigned functions." As the Eleventh Circuit asked in *Scaduto,* "[D]oes the imposition of powers traditionally associated with one branch of the government on officials of another branch interfere with their ability to perform their constitutionally-required duties in the branch of which they are a part?" 763 F.2d at 1196–97.

Applying the functional standard test of *Nixon,* the Court concludes that the imposition of the Commission's quasi-legislative powers on Article III judges *does* interfere with the judicial branch's accomplishment of its constitutionally assigned functions and with the appointed judges' ability to perform their constitutionally-required duties in the branch of which they are a part. First, judges-commissioners are required to serve on the Commission for a six year term.[2] Service on the Commission was full-time before the Guidelines went into effect; since the Guidelines went into effect, the voting members of the Commission hold part-time positions. 28 U.S.C.

§ 992(c). Further, "[a] Federal judge may serve as a member of the Commission without resigning his appointment as a Federal judge." *Id.* The time spent serving full-time and/or part-time on the Commission detracts from the time available to the judges-commissioners to work on their dockets and attend to their constitutionally assigned duties as members of the judiciary.

Secondly, the Court is seriously concerned about the actual and potential compromised impartiality resulting from service of Article III judges on this quasi-legislative body. In *Scaduto,* the Eleventh Circuit concluded that the service of federal judges on the President's Commission on Organized Crime violated the separation of powers doctrine. The Court found that the participation of federal judges on a pro-government, pro-law enforcement commission investigating and making recommendations concerning organized crime was likely to affect adversely the impartiality of the participating judges:

> Impartiality is one of the central, constitutionally-ordained, requirements of the federal judicial office, *see United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980), and this impartiality is threatened by many of the activities of the Commission. A judge who is charged with assisting and improving enforcement efforts against organized crime must adopt a pro-government perspective which is ill-suited to his obligation to be neutral in the courtroom.... Moreover, even if a judge could satisfy himself that he could separate his participation on the Commission from his judicial functions, it is not clear that litigants could sustain equal faith in his impartiality.

*Scaduto,* 763 F.2d at 1197.

The situation in *Scaduto* is similar to the situation presently before this Court. The Court is of the opinion that the service by Article III judges on a commission (independent or otherwise) which promulgates

---

2. 26 U.S.C. § 992(a) provides for six year terms for all voting members of the Commission except for the first Commission whose members' initial terms are staggered. Thus, some judges-commissioners will serve less than a full six year term on the first Commission.

substantive legislation undermines the public's perception of the impartiality of the participating judges and the judiciary as a whole.

Finally, the legislative nature of the duties of the Sentencing Commission makes the service of Article III judges on the Commission particularly inappropriate. The Third Circuit addressed this issue in *In re President's Commission on Organized Crime (Scarfo)*, 783 F.2d 370 (3d Cir.1986). Unlike the Eleventh Circuit in *Scaduto,* the Third Circuit upheld the service of judges on the Commission on Organized Crime. However, it did so, in significant part, because judicial service on the commission was voluntary and because the commission was purely advisory and did "not prosecute, indict, or *legislate.*" *Id.* at 378, 380 (emphasis added). In footnote three of *Scarfo,* the Third Circuit cited the Sentencing Reform Act Commission as "an example of Congressional direction that members of a Commission includes judges." *Id.* at 376.

The differences between the Commission on Organized Crime and the Sentencing Commission are readily apparent. While judicial service on the President's Commission on Organized Crime was voluntary, the Sentencing Reform Act requires that at least three members of the Sentencing Commission be federal judges. The Organized Crime Commission was a purely advisory body, with limited powers. It lacked any real legislative or prosecutorial authority. The Sentencing Commission, on the other hand, is essentially an administrative agency, with the authority to promulgate guidelines that have the force of law. Thus, the judges who sit on the Sentencing Commission exercise delegated legislative authority. This Court cannot see how Article III judges can constitutionally be *required* to serve in a *legislative* capacity.

Having found that the mandatory service of federal judges on the Sentencing Commission impairs the function of the judiciary, the Court can find no overriding need that would justify requiring such service. *Nixon,* 433 U.S. at 443, 97 S.Ct. at 2790. Under these circumstances, this Court is compelled to conclude that the mandatory service of Article III judges on the Sentencing Commission violates the doctrine of separation of powers.

### IV. Presidential Removal Power

In their supporting briefs, the defendants further argue that the President's authority under the Sentencing Reform Act to remove members of the Sentencing Commission also violates the doctrine of separation of powers. Under the Act, the members of the Commission may be removed by the President "for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a).

The Supreme Court considered the constitutionality of one branch of government having removal power over officers exercising powers of another branch in *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). The Supreme Court invalidated the Emergency Deficit Control Act of 1985 (Gramm–Rudman–Hollings Act) because Congress had unconstitutionally invested executive powers in the Comptroller General, an officer of the government working for Congress and subject to removal by Congress. The Court stated:

> To permit an officer controlled by Congress to execute the laws would be, in essence, to permit a congressional veto. Congress could simply remove, or threaten to remove, an officer for executing the laws in any fashion found to be unsatisfactory to Congress. This kind of congressional control over the execution of the laws ... is constitutionally impermissible.

106 S.Ct. at 3189.

If Congress may not retain removal power over officers exercising executive powers, then it is equally improper for the President to be invested with removal power over Commissioners in the judicial branch. The President's power to remove members of the Sentencing Commission violates the separation of powers doctrine.

### V. Severability

The Court has concluded that portions of the Sentencing Reform Act establishing the Sentencing Commission, codified at 28 U.S.C. §§ 991–998, unconstitutionally

**1220**

violate the doctrine of separation of powers, and that the sentencing guidelines promulgated by the Commission are invalid. The Court must now decide whether the remaining portions of the Act can be severed and permitted to stand alone.

In addressing the doctrine of severability, the Supreme Court has stated that

> a court should refrain from invalidating more of the statute than is necessary.... "[W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act insofar as it is valid."

*Regan v. Time,* 468 U.S. 641, 652, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984) (quoting *El Paso & Northeastern Rail Co. v. Gutierrez,* 215 U.S. 87, 96, 30 S.Ct. 21, 24, 54 L.Ed. 106 (1909)). "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airline, Inc. v. Brock,* 480 U.S. 678, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987) (quoting *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976)).

The sections of the Sentencing Reform Act establishing the Sentencing Commission and authorizing the promulgation of the guidelines constitute only a portion of the Act. Other portions of the Act make substantive changes in the federal criminal laws regarding general sentencing provisions (18 U.S.C. §§ 3551–3559), probation (18 U.S.C. §§ 3561–3566), fines (18 U.S.C. §§ 3571–3574 and §§ 3591–3599), imprisonment (18 U.S.C. §§ 3581–3586), and post-sentence administration in each of these areas (18 U.S.C. §§ 3601–3607, §§ 3611–3615, §§ 3621–3625, and §§ 3661–3673). After reviewing these sections, the Court concludes that these provisions of the Sentencing Reform Act are severable and shall remain valid. Additionally, portions of the Comprehensive Crime Control Act of 1984 that lie outside the Sentencing Reform Act

are neither addressed nor affected by this decision.

It is so ORDERED.