UNITED STATES of America, Plaintiff,

v.

Karen THOMAS and Mary
Ray, Defendants.

UNITED STATES of America, Plaintiff,

v.

Dwight Lee LIVINGSTON, Defendant.

UNITED STATES of America, Plaintiff,

v.

John B. BROWN, Defendant.

UNITED STATES of America, Plaintiff,

v.

Anthony CROSSFORD, Defendant.

Nos. 87–20218 G, 88–20016 G, 88–20018 G
and 88–20020 G.

United States District Court,
W.D. Tennessee, W.D.

June 7, 1988.

### ORDER ON CONSTITUTIONALITY OF SENTENCING GUIDELINES

GIBBONS, District Judge.

Defendants Karen Thomas, Mary Ray, Dwight Lee Livingston, John B. Brown and Anthony Crossford are all charged with committing crimes after November 1, 1987, the effective date of the sentencing guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–98. Defendants have filed various challenges to the Sentencing Reform Act and the guidelines themselves, based on both constitutional and statutory grounds. The government and the United States Sentencing Commission, as *amicus curiae,* have responded with briefs in support of the legality of the guidelines and the enabling legislation. Since each of these motions involves the same purely legal challenge, the cases have been consolidated for treatment of this issue alone.

The challenges to the guidelines before this court are currently being litigated in federal courts around the country.[1] The same arguments are presented to each court, resulting in decisions for and against the guidelines on varying grounds. District court opinions on the topic have proliferated; most of these outline the background of the guidelines and address each of the arguments raised by the defendants.[2] Because these opinions provide a complete review of the framework of this issue, this court will not simply repeat what has already been stated by others. Instead, this opinion will focus on the constitutional defects in the Sentencing Reform Act which this court finds determinative. For the reasons stated below, this court finds the sentencing guidelines unconstitutional because the structure and power of the Sentencing Commission violate the constitutional doctrine of separation of powers.

The doctrine of separation of powers manifests itself in the division of responsibilities among our three separate but coequal branches. "In establishing the three

---

1. *See United States v. Tolbert,* 682 F.Supp. 1517, 1519 n. 1 (D.Kan.1988) (partial listing of cases to date). Hon. Robert M. McRae, Jr., Senior District Judge, is the only judge in this district who has addressed this issue thus far. *United States v. Sammy Lee Smith,* 686 F.Supp. 1246 (W.D.Tenn.1988).

2. For a thorough review of the history and status of the Sentencing Commission and the guidelines, *see* Liman, *The Constitutional Infirmities of the United States Sentencing Commission,* 96 Yale L.J. 1363, 1364–1369 (1987).

branches of government, the Legislative, the Executive, and the Judicial, the Framers conferred separate and distinct powers on each, together with correlative checks and balances, as a safeguard against the encroachment or aggrandizement of one branch at the expense of another." *United States v. Arnold,* 678 F.Supp. 1463, 1469 (S.D.Cal.1988) (citation omitted). The enforcement of the doctrine leads to impartiality, uniformity and predictability in the application of laws, and thus the preservation of the rule of law, because those who make the law are not the same people who execute and apply it. In addition, under the doctrine, the law is more likely to serve the common interest rather than the interests of those who create it. Comment, *Separation of Powers and Judicial Service on Presidential Commissions,* 53 U.Chi.L.Rev. 993, 1001–1002 (1986) (authored by Wendy E. Ackerman). In evaluating whether a statute violates the separation of powers doctrine, the court must determine the extent to which the statute at issue prevents the particular branch from accomplishing its constitutionally assigned functions. If the potential for disrupting the balance between the branches exists, the court must then determine whether the impact is justified by an overriding objective which is within the acting branch's constitutional authority. *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *United States v. Arnold,* 678

F.Supp. at 1470. The Sentencing Reform Act violates the separation of powers doctrine by establishing the Sentencing Commission within the judicial branch and by mandating that Article III judges serve on the Commission, thus preventing the judiciary from maintaining its role as an impartial and independent decider of cases and controversies.[3]

The Sentencing Reform Act is unconstitutional because it establishes the Sentencing Commission within the judicial branch[4] but entrusts it with legislative powers. If one branch of government assumes a function which is more properly within the realm of another, the doctrine of separation of powers is violated. *In re Sealed Case,* 838 F.2d. 476, 511 (D.C.Cir.1988). The judiciary's powers are strictly limited to "interpreting and applying [laws] in cases properly brought before the courts," *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923), and to "determine[ing] actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." *Muskrat v. United States,* 219 U.S. 346, 361, 31 S.Ct. 250, 255, 55 L.Ed. 246 (1911). This case and controversy requirement not only prevents the judiciary from encroaching on the duties of the other branches but also preserves an independent and neutral judiciary by removing the branch from the decisions and activities of the other branches. *In re Sealed Case,* 838 F.2d at 512. Because the work of the Commission is

---

**3.** This court also questions whether the legislative power to devise a uniform sentencing system may be delegated to *any* commission or agency, regardless of the branch in which the body is located or its membership. "The establishment of criminal penalties and fines has always been considered a legislative function." *United States v. Tolbert,* 682 F.Supp. at 1522 (citations omitted). By delegating this power to a nonelected body, Congress permits the creation of law by an entity that cannot be held accountable at the ballot box. Congress certainly can, and does, delegate many of its law-making powers to administrative agencies in order that they may regulate specific, well-defined areas. The delegation at issue here, however, raises a serious threat to the concept of the people's check on the legislative process because the guidelines involve substantive moral judgments which are at the very heart of the legislative duty. The problem is illustrated quite well

by the possibility that the Commission may even decide whether to restore the death penalty and the crimes for which it should be imposed. Liman, *supra* n. 2 at 1365 n. 21. Our constitutional system would be irreparably harmed if a group of people, with no political accountability to the people of this nation, had authority to decide such a politically-charged issue.

**4.** The government concedes that placement of the Commission within the judicial branch violates the separation of powers doctrine, but argues that the provision locating the agency is severable. Further, the government argues that the Commission should be relocated in the executive branch. The court rejects this suggestion, because of the statute's other constitutional defects and the inappropriateness of such judicial revision of the plain statutory language.

essentially legislative, it cannot be entrusted to the judicial branch.

In promulgating the guidelines, the Commission was called upon to formulate rules of general applicability, having weighed the various conflicting public policy goals that operate in any legislative determination. Although imposing an individualized sentence is a judicial function, the creation of substantive sentencing guidelines that look to the future clearly is not. *United States v. Fonseca*, 686 F.Supp. 296 (S.D.Ala.1988); *United States v. Tolbert*, 682 F.Supp. at 1524; *United States v. Estrada*, 680 F.Supp. 1312, 1322 (D.Minn.1988). In addition, the other duties of the Commission are outside the narrowly defined powers of the judiciary. The Commission's work includes issuing policy statements for plea bargains, 28 U.S.C. § 994(a)(2)(E) (1987), recommending legislation involving the criminal justice system, 28 U.S.C. § 994(g), and responding to petitions asserting that particular guidelines should be changed. 28 U.S.C. § 994(r). *See Liman, supra* note 3, at 1369. Thus, because the Commission is charged with legislative functions but is located within the judicial branch, it is unconstitutional as a violation of the separation of powers doctrine.

An even more important constitutional defect than the location of the Commission within the judicial branch is the requirement that this body, charged with nonjudicial substantive [5] tasks, including policymaking, rule-making, supervisory, enforcement and oversight responsibilities involving the sentencing of criminal defendants, must include Article III judges among its members. *United States v. Arnold*, 678

F.Supp. at 1471. The presence of these judges on the Commission compromises the impartiality and independence of those individual judge-Commissioners, as well as the judicial branch as a whole. The role of a judge in our constitutional system is that of a neutral arbiter, able to decide cases and controversies based solely on the evidence and law that is properly before the court. Service on this Commission, however, requires judges to participate in the creation of the laws that they will later be asked to apply. Judges are constrained in their nonjudicial activities by the limits of propriety, in the sense that the nonjudicial duty cannot be so inconsistent with the judicial function as to void the judicial power, and by the "guarantees of personal liberty" conferred on all citizens and potential litigants. *Application of President's Comm. on Organized Crime (Scaduto)*, 763 F.2d 1191, 1196 (11th Cir.1985). Judicial service on the Sentencing Commission not only threatens the integrity of our system by asking judges to perform a task properly entrusted to another branch, but, by doing so, also impairs the judiciary's ability to accomplish its own duties fairly.

Although many of the constitutional problems discussed thus far implicate broad theoretical principles, the service of judges on the Commission impermissibly affects the judiciary in its day-to-day activities as well. To begin with, the courts on which the judge-Commissioners serve must suffer due to the devotion of time by these individuals to the work of the Commission.[6] In addition, the judge-Commissioners will certainly be called upon to recuse themselves from any challenge to the guide-

---

5. The work of this Commission differs from the procedural rule-making power which is unquestionably within the province of the judicial branch. *See Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). For example, the Supreme Court certainly has the authority to promulgate the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Federal Rules of Appellate Procedure and the Federal Rules of Evidence as all of these are procedural rules which make the litigation process more efficient, effective and fair. The guidelines, however, are substantive in nature since they actually determine the sentence received by defendants, thus affecting one of the

most fundamental rights of the people of this nation, the right to be free.

6. The legislation contemplates full-time service by the judges as Commissioners. The current judge-members initially devoted themselves to the endeavor of drafting the guidelines instead of their constitutionally-assigned task of deciding cases and controversies. Although the Commission attorney at oral argument before this court said that they have now returned to judicial duties, the many statutory duties of the Commission will obviously preclude them from concentrating fully on resolving cases.

lines, adding more cases to the dockets of the other judges. In fact, the number of cases involving the guidelines may be too large to allow for recusal in all instances, resulting in a judge-Commissioner being called upon to rule on the very law he helped draft.

Lastly, but crucial to the preservation of our constitutional system, the public's perception of the continued impartiality and independence of the judiciary is at risk due to the presence of judges on the Commission. Litigants appear before a court in order to have disputes decided in a fair and rational manner. If there is good cause to believe that the judge is influenced by more than the facts of a particular case, that the judge actually has a personal stake in the law to be applied, the confidence of the litigants in the system is tarnished. This scenario undermines the very role of the judiciary and threatens the continued vitality of the entire system.

This court does not question Congressional wisdom in including persons with judicial experience as Commission members. This laudable objective does not justify, however, the impact on the judicial branch imposed by the service of Article III judges. The same objective could have been achieved through requiring judicial experience for some members of the commission, thus permitting retired Article III judges, former Article III judges, state judges and others with similar experience to serve.

In arguing that the act is constitutional, the government and the Commission point out that other judges have served in government in nonjudicial capacities. Taking a historical view, they point out that John Jay was simultaneously Chief Justice and Ambassador to England and that Chief Justice John Marshall served briefly as Secretary of State during his tenure on the Supreme Court. This argument has two obvious answers. First, historical precedent, unchallenged at the time of its making, does not rewrite the Constitution. Second, no law passed by Congress required the service of Jay or Marshall in their nonjudicial position *because* of their judicial

office. The historical precedent is thus quite different from the situation before the court.

The government and the Commission also argue that the Commission's judge-members voluntarily serve "not in their Article III capacity as federal judges, but in their private capacities as individuals with special expertise in the area of sentencing." Government's Memorandum of Law at 822–27; *see* Brief of the United States Sentencing Commission at 16. This argument completely overlooks the fact that the judge-members are appointed *as* judges and *because* they are judges; such an appointment is hardly one of an individual in his private capacity. Further, although any individual judge could decline such an appointment, three judges *must* serve. Thus, judicial service is required, not voluntary.

One last feature of the Sentencing Reform Act that violates the separation of powers doctrine is the appointment and removal power vested in the President. Not only does the Act grant the President the power to appoint voting members of the Commission, it also provides that the President may remove members "for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a) (1987). Thus, the executive branch exercises control over the members of a Commission located in the judicial branch but who actually perform a legislative function. This potential interference by one branch with the workings of another branch through the power to remove an official from office has been declared by the Supreme Court to be a violation of separation of powers. *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) (because Comptroller General assigned executive powers under the Gramm–Rudman Act, removal power vested in Congress unconstitutional). In addition, the possibility that the executive could remove an Article III judge from any position jeopardizes the independence of the judiciary that the life tenure established by the Constitution was intended to protect.

The Sentencing Reform Act in its structuring of the Sentencing Commission thus unconstitutionally violates the separation of powers doctrine. Because the body itself violates the constitution, the product of the Commission, the sentencing guidelines, is also unconstitutional. Further, since Congress' entire purpose in enacting the statute is carried out through the Commission, there are no severable parts of the Act that may be given effect.

Each court that declares the Act unconstitutional also faces a practical decision about how criminal defendants should be sentenced pending a final resolution of the issue by the United States Supreme Court. In making this decision, this court is mindful that there is substantial basis for disagreement about the constitutional issue, as the opinions of judges who find no constitutional defect in the Act reveal. The court must consider the best way to avoid disruption for the prison system and the courts if the guidelines are ultimately upheld. This court also respects the intent of Congress in passing the Act and personally shares the congressional goals of increasing certainty in sentencing and reducing unwarranted disparity. Finally, the court also recognizes the importance of giving a defendant at sentencing a legitimate expectation of finality in the severity of a sentence. *See United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *United States v. Fogel,* 829 F.2d 77 (D.C.Cir.1987).

All these considerations are best reconciled in the following procedure. In each case, the court will announce two sentences—one imposed under the law prior to November 1, 1987, and one imposed pursuant to the guidelines. Because this court has ruled that the Act is unconstitutional, defendants will commence service of the sentence under the law prior to November 1, 1987. The judgment and commitment order will reflect this sentence. If the Act is ultimately found to be constitutional, the guideline sentence will then take effect and a new judgment and commitment order will be entered. All defendants will be advised of this procedure at sentencing and the possibility that their guideline sentence will later become effective. Although this procedure may be cumbersome initially, it will avoid possible disruption caused by numerous resentencings later and will give each defendant a full picture of the time he may have to serve.

IT IS SO ORDERED.