**UNITED STATES of America, Plaintiff,**

v.

**Michael ELLIOTT, Defendant.**

**Crim. No. 87–CR–393.**

United States District Court,
D. Colorado.

April 13, 1988.

Bruce Black, Gay Guthrie, Asst. U.S. Attys., Denver, Colo., for plaintiff.

Charles Szekely, Asst. Federal Public Defender, Brian Holland, Denver, Colo., for defendant.

Donald A. Purdy, Jr., U.S. Sentencing Com'n, Washington, D.C., for the Sentencing Com'n.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

Michael Elliott is before this court for sentencing on his pleas of guilty to two violations of 18 U.S.C. § 876 by mailing threatening communications to two women. The statute defining this crime provides that the defendant "shall be fined not more than $500 or imprisoned not more than two years, or both." Because Mr. Elliott's criminal conduct occurred after November 1, 1987, the Sentencing Reform Act of 1984, as amended by the Sentencing Act of 1987, is applicable.

18 U.S.C. § 3553 governs the imposition of sentence. Subsection (a) provides as follows:

(a) **Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Under this section, the court has wide discretion in determining a period of confinement and the listed factors are similar to those used in the sentencing process before the Sentencing Reform Act. The factors reflect a concern for the individual defendant as well as societal needs, and, apparently, the weights the sentencing judge gives to these factors would depend upon the unique factual circumstances of each defendant's case. Section 3552 requires a presentence investigation of a defendant and amended Rule 32(c) of the Federal Rules of Criminal Procedure governs the contents and handling of the reports of those investigations. These provisions would make little change in the procedures followed in federal courts before the new legislation.

A fundamental and dramatic change results from the mandate in 18 U.S.C. § 3553(b) which provides as follows:

(b) **Application of guidelines in imposing a sentence.** The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in

formulating the guidelines and that should result in a sentence different from that described. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, the applicable policy statements of the Sentencing Commission, and the purposes of sentencing set forth in subsection (a)(2). Read literally, subsection (b) directs that if there is an applicable Sentencing Commission Guideline the court must accept that guideline as an adequate evaluation of all of the factors enumerated in subsection (a) and exercise only the very limited discretion of deciding the penalty within the range established by that guideline. Thus, the applicable guideline directly controls the sentencing decision.

The source of the Sentencing Guidelines is the United States Sentencing Commission established by 28 U.S.C. § 991(a) "as an independent Commission in the judicial branch of the United States." The seven voting members of the Commission are appointed by the President and the statute requires that "at least three of the members shall be federal judges selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States." Section 991(a). The statute also provides that the Attorney General or his designee "shall be an ex officio, non-voting member of the Commission." Section 991(a). The members of the Commission are subject to removal from the Commission by the President for good cause. Section 991(a). One of the members of the Commission is designated as the chairman. Section 991(a). The voting members of the Commission are appointed for terms of no more than six years, and no member may serve more than two full year terms. Section 992(a) and (b). A federal judge may serve on the Commission without resigning his appointment as a federal judge. Section 992(c). The Commission acts by an affirmative vote of at least four voting members. Section 994(a).

The stated primary purpose of the Sentencing Commission is to establish sentencing policies and practices that assure the realization of the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2), that provide certainty and fairness in meeting the purposes of sentencing, including avoiding unwarranted disparity among sentences, and that reflect the advancement in knowledge of human behavior as it relates to the criminal justice process. Section 991(b)(1)(A), (B), (C).

Section 994 directs the Sentencing Commission to promulgate and distribute guidelines "for use of a sentencing court in determining the sentence to be imposed in a criminal case." Section 994(a)(1). "For each category of offense involving each category of defendant," the Commission is directed to establish a "sentencing range that is consistent with all pertinent provisions of Title 18, United States Code." Section 994(b). In establishing "categories of offenses," the Commission is directed to consider the grade of the offense, the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense, the nature and degree of harm caused by the offense, the community view of the gravity of the offense, the public concern generated by the offense, the deterrent effect a particular sentence may have on the commission of the offense by others, and the current incidence of the offense in the community and in the nation as a whole. Section 994(c)(1) through (7). In establishing "categories of defendants," the Commission is directed to consider a number of factors including the age, education, skills, mental and emotional health and the family and community ties of the defendant. Section 994(d)(1) through (11).

The Commission is also directed to review and revise the guidelines and consult with authorities on various aspects of the federal criminal justice system. The United States Probation System, the Bureau of Prisons, the Judicial Conference of the United States, the Criminal Division of the United States Department of Justice, and a representative of the Federal Public De-

fender system are directed to submit at least annually a report to the Commission commenting on the operation of the Commission's guidelines, suggesting changes in the guidelines that appear to be warranted and otherwise assessing the Commission's work. The revised or amended guidelines are to be reported to Congress by the Commission, "and the amended guidelines shall take effect one hundred and eighty days after the Commission reports them, except to the extent the effective date is enlarged or the guidelines are disapproved or modified by Act of Congress." Section 994(p). Finally, the Commission is directed to consider any petition filed by a defendant requesting modification of the guidelines utilized in the sentencing of that defendant. Section 994(s). Each judge imposing a sentence under the guidelines is required to submit a written report of the sentence to the Commission. Section 994(w).

The Guidelines promulgated by the Commission establish a scoring system in which points are added and subtracted by considering specific elements of offense conduct and offender characteristics. Chapter Two, titled "Offense Conduct," gives numerical values to the particular crimes defined in the criminal code as "base offense levels" and provides for increases based on "specific offense characteristics." Chapter Three contains Guidelines which require point adjustments for "victim-related adjustments," "role in the offense," and "obstruction." Chapter Four directs adding points for criminal history categories. Chapter Five sets out a sentencing table to be used in determining the specific sentence to be imposed on a particular defendant.

Section 2B3.3 of these Guidelines establishes a "base offense level" of 9 for extortion, and provides for an increase for "specific offense characteristics" if the greater of the amount obtained or demanded exceeds $2,000. The amount of the increase is determined from a table for offenses involving fraud or deceit set forth in Section 2F1.1. Section 3A1.1 provides for a "victim related adjustment" of an increase of two levels if the defendant knew or should have known that the victim of the offense was "unusually vulnerable due to age, physical or mental condition, or that the victim was particularly susceptible to the criminal conduct." Under the Guidelines, an additional adjustment of a two level increase is required "if the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." Section 3C1.1. Finally, a downward adjustment may be made for acceptance of responsibility under Section 3E1.1, but that adjustment is not given if the defendant "obstructs the trial or the administration of justice." Section 3E1.1, Commentary Application Note # 5.

In the presentence report prepared for Mr. Elliott in this case, the probation officer added one level under specific offense characteristics, giving an adjusted offense level of 10, because Elliott attempted to extort more than $2,000 from ten victims, if the amounts as to all victims are aggregated. The probation officer also recommended the addition of two levels for "vulnerable victims" and another increase of two levels because the defendant did not advise of a plea of nolo contendere to trespass in 1982. Accordingly, the recommended total offense level computation is 14 and based upon the computation table in Chapter 5 of the Guidelines, the sentencing range is 15 to 21 months of imprisonment, one year of supervised release and a fine range of $3,000 to $30,000. The court must also consider an additional fine sufficient to pay the cost to the government of the imprisonment and supervised release which is reported to be $14,652 yearly for incarcerated defendants and $1,000 yearly for supervision.

The defendant has challenged the scoring suggested by the probation officer, contending that the victims were not vulnerable; that the base offense level should be 9 because only the actual loss to the victims in the counts of conviction should be considered; and there should be no points added for obstruction of justice because the defendant was not guilty of a material falsehood. These mixed questions of fact

and law remain for determination. The defendant has raised a more basic objection, challenging the constitutionality of the Guidelines and the underlying legislation. Briefs were submitted by the defendant, the government and counsel for the Sentencing Commission, as amicus curiae.

As a starting point, Congress has the power to define criminal offenses and to prescribe punishments for those convicted of them. *Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). Accordingly, Congress could mandate specific penalties for particular crimes leaving the sentencing court with no discretion in determining the deprivation of liberty resulting from a conviction. This statute does not establish such specific penalties. It delegates to the Sentencing Commission the task of devising a method for limiting judicial discretion in an attempt to address the perceived problem of disparity.

The structure of the law is that Congress established the factors to be considered in imposing a sentence in Section 3553(a), gave discretion to the courts to weigh those factors in making sentencing decisions, and granted to the Commission the authority to limit that discretion through sentencing guidelines. Those Guidelines, as they exist, have very specific factual determinants with a scoring system which mandates a particular range of time for incarceration and particular dollar amounts for fines. The two dimensional matrix with offender characteristics quantified on one axis and offense conduct quantified on the other dictates the particular impact on the liberty of the defendant in this case.

The language of the act establishes the Sentencing Commission "as an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). If the promulgation of the sentencing guidelines is truly an Article III judicial function, it must be performed by Article III judges. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). A majority of the members are not Article III judges. Therefore, the Sentencing Commission is an unconstitutional entity if it is placed in the judicial branch. Additionally, if the Commission is properly located within the judicial branch, the President's power to remove the Commissioners, although limited for cause, is an interference with the independence of the Commission, and consequently the judicial branch. The Commission in its brief and argument, supports the statute as written and suggests the analogies of the Judicial Conference of the United States and the Judicial Councils in the Circuits. The analogy is not apt because those bodies exercise only administrative and procedural functions without having any effect on the adjudicative processes of any of the courts.

The government evades the patent unconstitutionality of the placement of the Commission in the judicial branch by arguing that the plain language of the statute should be changed to mean that Congress delegated authority to the Commission as an executive agency, and that it has engaged in the kind of rulemaking typical of agencies in the executive branch departments. Accordingly, the guidelines are said to be the product of an executive function. Some support for this view of executive branch rulemaking is found in the fact that Section 994(x) of the Act directs the Sentencing Commission to comply with the notice and public comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553.

If the Commission performs executive functions, the judges may not participate in it in their role as Article III judges. *Buckley v. Valeo*, 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976); *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792). The government attempts to overcome this impediment by asserting that the Article III judges sit on the Commission as individuals, not as Article III judges. That argument is specious. While the individual judges now on the Commission consented to serve, they are there because they are Article III judges and the statute mandates participation by three persons with Article III status. Congress intended the participation of these people because they are judges. While taking these three judges

out of judicial service for a limited time does not constitute a significant infringement on the functioning of the judiciary as a branch of government, it is the mixing of adjudicative and policymaking functions which contravenes the separation of powers doctrine.

If there were no constitutional prohibition of the participation of judges in an executive rulemaking agency, the combination of powers resulting from placement of the Commission's function in the executive branch presents a danger to individual liberty. The philosophical predicate for the separation of powers doctrine is the tyrannical tendency inherent in the combination of governmental powers. *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583 (1986). That danger is enhanced when the combination is the powers of prosecution and punishment. *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 587–89, 72 S.Ct. 863, 866–868, 96 L.Ed. 1153 (1952).

The government asserts that the Sentencing Commission and Guidelines are analogous to the United States Parole Commission and its guidelines. Indeed, the Sentencing Commission adopted the formulaic approach of the Parole Commission in establishing a mathematical scoring system which limits the authority of the sentencing court in imposing a penalty. But, the two commissions are different. The Parole Commission is "an independent agency within the Department of Justice." 18 U.S.C. § 4202. Its placement within that department is consistent with the recognition that the Parole Commission's statutory mission is comparable to the power of clemency, a presidential power under Article II, Section 2 of the Constitution. The Parole Commission guidelines were established pursuant to 18 U.S.C. § 4203(a) to control the exercise of the power granted to it under Section 4203(b), to parole individual inmates. The Sentencing Commission Guidelines are designed to control the discretion given to Article III judges by 18 U.S.C. § 3553(a) in sentencing particular defendants. If this statute explicitly placed the Sentencing Commission in the Department of Justice, its unconstitutional-

ity would be manifest: the executive department responsible for prosecution of crimes cannot control the exercise of discretion in determining punishment granted to Article III judges by Section 3553(a). Placement of the Commission anywhere in the executive branch is likewise unconstitutional because the President is the chief prosecutor. *In re Sealed Case,* 838 F.2d 476, 487–89 (D.C.Cir.1988).

The Commission, in argument, suggested that any infirmity caused by the mixture of functions and powers can be avoided by considering the Commission as an independent agency outside of the control of the executive branch, in the manner of the Securities Exchange Commission, the Interstate Commerce Commission and the Federal Trade Commission. These independent agencies use their rulemaking and adjudicative authority to perform specialized regulatory missions aimed at particularized areas of public interest. The special mission of the Sentencing Commission is to regulate the judicial discretion granted by Section 3553(a) of the statute in imposing a sentence. No other existing agency has any comparable mission: the regulation of the functioning of one of the three constitutionally created branches of the United States government. Moreover, the word "independent" in the statute is not operative. Congress did not give the Commission final authority to promulgate the Guidelines; they became effective only after they were submitted to Congress and it failed to act on them. Similarly, amendments to the guidelines are not effective before the expiration of 180 days from their submission to the Congress and, again, only upon a failure to act. The Administrative Procedure Act, governing executive and independent agency rulemaking, has no comparable requirement. Congressional inertia on the sentencing Commission Guidelines is not the equivalent of legislative approval because the Supreme Court has held that Congress may exercise its Article I power only by complying with Article I, Section 7 by passing a bill through both the House of Representatives and the Senate and presentment to the

President. *INS v. Chada,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

While it is recognized that Congress could mandate specific sentences for particular crimes and while Congress has previously granted almost complete discretion in determining sentences within statutory limits for most federal crimes, there is a substantial question whether Congress can control the discretion of the courts without running afoul of the requirements of an independent judiciary under Article III. If Congress had passed the Guidelines as legislation, the question would be whether it has unduly interfered with the adjudication of cases or controversies. The Supreme Court made clear in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, that adjudicative power over certain types of substantive rights can be granted only to the judiciary with Article III protections against interference from the political branches and other undue influences. There can be no controversy more fundamental than that which involves the extent to which an individual's liberty will be denied to provide just punishment for an offense, considering the societal needs to deter criminal conduct, to promote respect for law, to protect the public from further crimes and to attempt correctional treatment as a preventive measure. Considering the Guidelines applicable to Michael Elliott as substantive criminal law enacted by Congress, they make a sentencing hearing meaningless. This court would have only the power to interpret the undefined factors of "vulnerable victims" and apply the poorly defined concept of "obstruction of justice" in determining what score to give this defendant and, then, to exercise discretion within the penalty window dicated by these mechanistic rules. Congress cannot combine a grant of discretion to the courts with such restrictions that the results of the adjudicative processes are dictated.

The effect of the Guidelines is not different from the operation of conclusive presumptions which consistently have been held to constitute a denial of due process. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); *Skinner v. Oklahoma,* 316 U.S. 535 (1942); L.H. Tribe, *American Constitutional Law,* § 16–32 (1978). Michael Elliott is free to contend that his victims were not vulnerable and that his statements to the probation officer concerning prior arrests do not constitute an obstruction of justice. But, if this court finds to the contrary, the ultimate effect is that the added four points and resultant increase in the minimum incarceration required is conclusive proof of the factors set forth in Section 3553(a)(2)(A) through (D). The addition of these points works a substantial difference in the guideline range applicable in this case. This illustrates the inherent infirmity in providing judicial discretion but mandating the use of guidelines which have little rational relationship to the statutory factors which the court must consider. This is not an interference with judicial discretion, it is a denial of due process in that the defendant has no opportunity to convince the sentencing judge that there are circumstances which override these point allocations. The question is whether Congress may substitute for constitutional courts, holding the judicial power, an administrative agency of any kind, independent or otherwise, to make determinations of the factual components of the sentencing criteria established in Section 3553(a).

It is interesting to compare the development of the Federal Rules of Evidence with the sentencing guidelines. The rules were adopted in 1974 by legislative action by the Congress and with the approval of the President. Thus, their enactment was the direct product of Congress functioning under Article I, Section 7 of the Constitution. They do, indeed, infringe on the freedom of the judiciary to control the processes of adjudication of all cases and controversies within the jurisdiction and, certainly, the rules affect the results. They do not, however, control counsel or the court in defining the scope of the controversy. Thus, the Rules of Evidence influence the process but do not interdict the authority of the

**1542**

court in like manner as the Sentencing Guidelines.

■ For these reasons, this court concludes that those portions of the Sentencing Reform Act of 1984, as amended by the Sentencing Act of 1987, which establish the United States Sentencing Commission and the Guidelines promulgated by that Commission are unconstitutional because they violate the separation of powers doctrine and deny the defendant due process of law. Accordingly, it is

ORDERED that the sentencing of Michael Elliott will be determined in accordance with pre-existing law.