**UNITED STATES of America, Plaintiff,**

v.

**Frank COSTELON, Defendant.**

**Crim. A. No. 88–CR–69.**

United States District Court, District of Colorado.

Aug. 1, 1988.

Michael J. Norton, U.S. Atty., Michael P. Carey, Asst. U.S. Atty. (Bruce F. Black, Asst. U.S. Atty., Denver, Colo., on brief), for plaintiff.

M. Kathryn Bradley, Denver, Colo., for defendant.

John R. Steer and Donald A. Purdy, Jr., U.S. Sentencing Com'n, Washington, D.C., for the Sentencing Com'n, amicus curiae.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER comes before the court on defendant's motion to declare the Sentencing Reform Act of 1984 constitutionally invalid. On May 26, 1988, defendant pled guilty to Count I of the indictment, charging a violation of 21 U.S.C. § 841. The indictment specifies that on February 18, 1988, defendant knowingly and intentionally possessed, with the intent to distribute, more than one hundred (100) grams of heroin, a controlled substance. By statute, the offense carries a penalty of not less than five years confinement and not more than 40 years confinement, not more than a $2,000,000.00 fine, or both, and a mandatory $50.00 assessment fee. 21 U.S.C. § 841. Since the offense took place after November 1, 1987, defendant's sentence also is subject to the provisions of Title II of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837, *reprinted at* 28 U.S.C. § 991–998 ("Sentencing Act" or "Act").

At his sentencing hearing on July 11, 1988, defendant moved the court to declare the Act unconstitutional. We have reviewed defendant's motion and supporting memorandum, the government's brief in opposition to defendant's motion, and the memorandum submitted by the Sentencing Commission as amicus curiae. The court also has studied the statute and the numerous opinions relevant to the issues before us. We conclude that: (1) the Act does not violate separation of powers principles; (2) Congress did not improperly delegate its legislative authority to establish sentences; and (3) defendant's right to due process of law is not denied but, rather, is expanded under the Act. For the reasons set forth below, defendant's motion is DENIED.

## I.

## INTRODUCTION

After years of study and review, Congress established the United States Sentencing Commission ("the Commission") by enacting the Comprehensive Crime Control Act of 1984. The law created the Commission as "an independent commission in the judicial branch of the United States...." 28 U.S.C. § 991(a). The Commission is a permanent body with seven voting members. The President appoints individuals to the Commission with the consent of the Senate. Three members must be federal judges chosen from a panel of six candidates nominated by the Judicial Confer-

ence. The Attorney General of the United States or his designee and the Chairman of the United States Parole Commission also serve as non-voting *ex officio* members of the Commission. All members serve staggered six-year terms of office and are eligible for reappointment. 28 U.S.C. §§ 992(a) and (b). The President may remove commissioners for neglect of duty, malfeasance in office, or for other good cause shown. 28 U.S.C. § 991(a).

Congress passed the Act with the purpose of eliminating unwarranted discrepancies in the sentencing of defendants convicted of federal offenses. The Commission's primary function is to develop determinate guidelines for the sentencing of defendants by federal judges. A vote of four of the seven members is required to issue the sentencing guidelines. 28 U.S.C. §§ 991(a), 994(a). Under its legislative mandate, the Commission is to establish sentencing policies and practices consistent with the four purposes of punishment: deterrence, protection of the public, rehabilitation, and sentencing commensurate with the seriousness of the crime. 29 U.S.C. §§ 991(b)(1)(A) and (b)(2).

The Commission's mandate, as set forth in the Act, provides the commissioners with explicit and detailed guidance for establishing the sentencing guidelines. Congress directed the Commission to establish a guideline schematic based upon the nature of the offense and the defendant's personal character and criminal history. The statute sets forth seven factors for the Commission to consider in evaluating the offense categories, and the law provides the Commission with a list of eleven offender characteristics. 28 U.S.C. §§ 994(c-d). Congress dictated that the guidelines were to be neutral as to the offender's race, sex, national origin, creed, and socioeconomic status. 28 U.S.C. § 994(d). The Commission was directed to analyze the average past sentences for federal crimes. 28 U.S.C. § 994(m). Congress mandated that the commissioners evaluate other relevant sentencing factors, including prison population, punishment for career criminals, and mandatory jail sentences for certain criminal acts. 28 U.S.C. §§ 994(g-i). The Act also directs that other categories of first offenders could not be sentenced to terms of confinement. 28 U.S.C. § 994(j). Significantly, Congress charged the Commission to promulgate guidelines which avoid unwarranted sentencing disparities among defendants with similar records. 28 U.S.C. § 991(b)(1)(B).

After several years of diligent work and numerous public hearings, the Commission promulgated the sentencing guidelines by a vote of 6 to 1. The guidelines became effective on November 1, 1987, following the statutory six-month waiting period for Congressional action. The guidelines issued by the Commission prescribe narrow sentencing ranges within statutory maximum and minimum penalties. The guideline range in each case is determined by the nature of the offense and the criminal history of the offender. *See* 28 U.S.C. §§ 994(c-d). The sentencing judge must impose a sentence within the range set forth in the guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that proscribed." 18 U.S.C. § 3553(b). The government and the defendant may appeal the judge's departure from or incorrect application of the guidelines. 18 U.S.C. § 3742.

The Commission has a continuing responsibility to study the effectiveness of sentencing practices and to review and revise the sentencing guidelines. 28 U.S.C. § 991(b)(2), 994(*o*). Congress authorized the Commission to rule on petitions from defendants seeking to modify the guidelines. 28 U.S.C. § 994(s). The commissioners also maintain significant research, reporting, and recommendatory functions. 28 U.S.C. §§ 991(b)(2); 994(m), (*o*-s), (w); 995(a)(8), (12–20); and 997.

## II.

### STANDARD OF REVIEW

A federal court must cautiously exercise its power to review the constitu-

tional validity of a legislative act. *Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S.Ct. 3262, 3268–3269, 82 L.Ed.2d 487 (1984) (plurality opinion). Applying the basic rules of statutory construction, the court has a duty to construe the Sentencing Act in such a way as to preserve its constitutionality. *Morrison v. Olson*, —— U.S. ——, ——, 108 S.Ct. 2597, 2614–2616, 101 L.Ed.2d 569 (1988). Where the court has serious doubts as to the validity of a particular statutory provision, we must determine whether a construction of the statute, avoiding the constitutional question, is fairly possible. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 3252, 92 L.Ed.2d 675 (1986). We adhere to this fundamental principle of statutory analysis unless to do so would pervert Congressional intent or effectively rewrite the law. *Id.*

 Pursuant to these rules of construction, a reviewing court must refrain from invalidating more of a statute than is necessary. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1480, 94 L.Ed. 2d 661 (1987). We have the duty to maintain the constitutionality of the Act in so far as possible by separating the objectionable provisions from those found to be legally valid. *Id.* The relevant inquiry in determining the severability of an unconstitutional statutory provision is whether the Act will function in a manner consistent with congressional intent. *Id.* at 1481. A legal presumption rests in favor of severability. *Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984). The Supreme Court has consistently upheld the constitutionality of statutes while declaring certain provisions of the same laws to be infirm. *See, e.g., Alaska Airlines v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1487, 94 L.Ed.2d 661; *I.N.S. v. Chadha*, 462 U.S. 919, 931–35, 103 S.Ct. 2764, 2773–2776, 77 L.Ed.2d 317 (1983); *Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976).

## III.

## NATURE AND FUNCTIONS OF THE COMMISSION

The express language in the Act establishes the Sentencing Commission "as an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). Yet a majority of the members of the Commission are not Article III judges, and the statute provides the President with the power to remove the commissioners for cause. We agree with the conclusion reached by Judge Richard P. Matsch of this court that the Commission is not constitutionally situated in the judicial branch. *United States v. Elliot*, 684 F.Supp. 1535, 1539 (D.Colo.1988).[1] *See also United States v. Estrada*, 680 F.Supp. 1312 (D.Minn.1988) (Heaney, Circuit J.).

In applying principles of statutory construction set forth above, we are called upon to determine whether the Act can be construed in such a way as to preserve its constitutionality. The court is not bound by the legislature's placement of the Commission within the judicial branch. *United States v. Estrada*, 680 F.Supp. 1312, 1318 n. 9 (D.Minn.1988) (citing *Oregon v. Mitchell*, 400 U.S. 112, 205, 91 S.Ct. 260, 305, 27 L.Ed.2d 272 (1970) (Harlan, J., concurring and dissenting)). Separating this objectionable provision from the remaining body of the statute is consistent with the intent of Congress. The text of the Act and its legislative history evince Congress' intent to effect a major reform in the federal courts by establishing determinate sentencing. *See* 28 U.S.C. § 991(b); S.Rep. No. 98–225, 98th Cong., 2d Sess. 65, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3182, 3248. Congress was concerned more with the composition of the Commission and its authority to promulgate guidelines than with the placement of the Commission in a particular branch of government.[2]

---

**1.** Judge Matsch reasoned that if the promulgation of the guidelines represents an Article III judicial function, that function must be performed by Article III judges. *United States v. Elliot*, 684 F.Supp. at 1539 (citing *Northern Pipe-*

*line Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).

**2.** The legislative history of the Act supports our contention that placement of the Commission in a different branch does not subvert congression-

The location of the Commission within the judicial branch did not motivate passage of the legislation, nor is the provision crucial to the statute's surivival.

■ Irrespective of the statute's language but in accordance with Congressional intent, we now consider what functions the Commission actually performs. *See Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 3192, 92 L.Ed.2d 583 (1986). Congress maintains exclusive power under the Constitution to define criminal offenses and to prescribe the punishments for violating these laws. *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); *Ex Parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). This authority to fix punishments may be delegated by Congress to the executive. For example, in earlier legislation Congress delegated the responsibility to promulgate guidelines for determining actual release dates of federal inmates to the United States Parole Commission ("Parole Commission"). 18 U.S.C. § 4203(a)(1). This statutory delegation of Congressional functions to the Parole Commission, an independent agency within the executive branch, has withstood constitutional challenge. *Geraghty v. United States Parole Comm'n*, 719 F.2d 1199, 1211 (3d Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984). Other examples of Congressional delegation of these functions abound.[3]

■ The Sentencing Act represents another example of Congressional delegation of these legislative functions. Under the Act, Congress mandated that the Commission establish sentencing policies and prac-

tices for the federal criminal justice system. The Commission was directed to eliminate sentencing disparities and adopt a guidelines system for determinate sentencing. As set forth above, the statute instructs the Commission to recognize and consider numerous congressional preferences, standards, and public policies in developing the sentencing guidelines. The commissioners' responsibility to carry out its legislative mandate requires that the Commission perform conventional executive functions. The court concludes that the Commission is properly situated within the executive branch.

## IV.

## SEPARATION OF POWERS

### A. *General Principles*

[8] In determining whether the Sentencing Act violates the constitutional doctrine of separation of powers, the court must apply a pragmatic, flexible analysis. *Nixon v. Adm'r of Gen. Serv.*, 433 U.S. 425, 442–43, 97 S.Ct. 2777, 2789–2790, 53 L.Ed.2d 867 (1977). The Supreme Court has never held that the Constitution requires the three branches of government to operate with absolute independence. *Morrison v. Olson*, —— U.S. at ——, 108 S.Ct. at 2620–2621. A statutory scheme violates the separation of powers doctrine only if the law expands the power of a particular branch or functionally impairs the ability of that branch to perform its constitutional responsibilities. *Nixon v. Adm'r of Gen. Serv.*, 433 U.S. at 443, 97 S.Ct. at 2790. Again, we begin our inquiry by presuming

---

al intent. The drafters primarily were concerned that all three branches of government participate in the selection of commissioners and that the Commission be composed of a certain number of federal judges. S.Rep. No. 98–225, 98th Cong., 2d Sess. 63, 64, 418, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3182 at 3246–7, 3714. The legislative history is devoid of debate on the location of the Commission in any particular branch of government.

3. For example, Congress delegated authority to the United States Attorney General to classify controlled substances. 21 U.S.C. § 811. The constitutionality of this delegation of legislative

function has been upheld, even though the Attorney General directly determines the applicable penalty provision by classifying substances in particular schedules. *United States v. Gordon*, 580 F.2d 827, 838–40 (5th Cir.), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978). Moreover, the Supreme Court has determined that Congress' delegation to the Attorney General of its authority to determine deportation, a form of criminal sentence, also is constitutional. *I.N.S. v. Chadha*, 462 U.S. 919, 953 n. 16, 103 S.Ct. 2764, 2785 n. 16, 77 L.Ed.2d 317 (1983).

the Act to be constitutional. *See* cases cited in Part II *supra.*

Defendant contends that the Act violates the separation of powers doctrine in three ways: (1) by including three Article III judges on the Commission; (2) by permitting non-Article III judges to engage in judicial functions; and (3) by vesting the power to remove commissioners, including Article III judges, with the President.

### B. *Service of Article III judges on the Commission*

■ The Supreme Court has held that executive and administrative duties of a nonjudicial nature may not be imposed upon judges holding office under Article III of the Constitution. *Buckley v. Valeo,* 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed. 2d 659 (1976). This limitation ensures the independence of the judicial branch and prevents Article III judges from performing responsibilities reserved for other branches of government. *Morrison v. Olson,* — U.S. —, —, 108 S.Ct. 2597, 2612–2613, 101 L.Ed.2d 569 (1988). However, Article III does not absolutely prohibit Congress from conferring miscellaneous powers upon Article III judges. *Id.* Congress may impose some extrajudicial duties on individual Article III judges even though Congress could not impose those duties on the courts as a whole. *Matter of President's Comm'n on Organized Crime (Scarfo),* 783 F.2d 370, 375 (3d Cir.1986).

■ As a general proposition, Congress may confer extrajudicial duties upon Article III judges if the power of the judiciary is not expanded thereby and the functions of the judicial branch are not functionally impaired. We find that the presence of three judges on the Commission does not violate the separation of powers doctrine. First, the court finds that the statute does not unconstitutionally expand the power of the judicial members of the Commission or the judicial branch. The judges serving on the Commission do not perform Article III functions. They are appointed to the Commission to serve in a non-Article III capacity. The commissioners do not decide cases and controversies by participating on the Commission. They contribute their expertise to the Commission's performance of its Congressional policy mandate. As noted, Congress created the Commission in order to eliminate the disparity in sentencing of federal offenders. The Act does not direct the Commission to establish new crimes or penalties, and Congress did not delegate its policy-making discretion to the Commission. Rather, the Act directs the Commission to develop a Congressionally-mandated sentencing scheme consistent with detailed policy instructions set forth in the statute. The statutory directive does not unconstitutionally expand the power of the judiciary.

Second, the presence of Article III judges on the Commission does not interfere with the work of the judicial branch nor impair its constitutional functions. Defendant argues that service of judges on the Commission conveys the appearance of partiality, may cause other federal judges to award undue deference to the views of these few colleagues, and may cause interference with the orderly administration of criminal cases. We disagree. Judges serving on the Commission may recuse themselves to ensure the appearance of impartiality. Widespread judicial deference to the views of a few members of the federal court is hardly a realistic worry. The extreme divergence of judicial opinion on the constitutionality of the guidelines evinces the ability of judges to decide issues without fear of reproach.[4] Finally, there is simply no evidence that service by three federal judges on the Commission will adversely impact the orderly administration of justice in the federal courts. Our position is supported by vast historical precedent for extrajudicial government service by members of the federal bench.[5]

---

4. To date, approximately 80 federal judges have upheld the statute against constitutional challenges, while 120 members of the judiciary have determined the Act violates the Constitution. Although this number will not remain constant, the statistic reinforces the court's contention that members of the judiciary act independently.

5. Federal judges have been called upon to perform public service since the inception of our government. In 1794, Chief Justice John Jay

·For these reasons, we find that inclusion of Article III judges on the Commission does not violate the separation of powers doctrine.

C. *Inclusion of non-Article III individuals on the Commission*

█ Defendant also argues that inclusion of non-Article III persons on the Commission encroaches on the independence of the judiciary. Applying the functional separation of powers test above, we disagree. The function of the judicial branch is limited to deciding cases and controversies. *Muskrat v. United States*, 219 U.S. 346, 356, 31 S.Ct. 250, 253, 55 L.Ed. 246 (1911). However, the court has determined that the Commission actually performs functions of the executive branch as delegated by Congress. The commissioners do not decide cases and controversies. Inclusion of non-Article III persons on the Commission does not violate the principles of separation of powers.

D. *President's power of removal*

█ Finally, defendant contends that the President's power to remove commissioners for cause violates the separation of powers doctrine. The court finds that functional placement of the Commission within the executive branch eliminates this problem as well. The President may properly remove commissioners because they perform executive branch functions. *Morrison v. Olson*, —— U.S. ——, ——, 108 S.Ct. 2597, 2616–2617, 101 L.Ed.2d 569 (1988). This provision of the statute does not violate separation of powers principles.

V.

DELEGATION

Defendant also contends that the Act unconstitutionally delegates legislative authority to the Commission. He argues that the legislature cannot delegate its power to fix criminal penalties and that the Act fails to set sufficient standards or intelligible principles to guide the Commission's work. The court has already addressed defendant's first argument. *See* discussion in Part III *supra.* Congress may delegate these powers to the Commission. We now turn to defendant's assertion that Congress failed to fix sufficient standards to guide the Commission's work.

█ The court must uphold a delegation of Congressional power against constitutional attack if the statute clearly delineates: (1) the general policy of the legislation; (2) the public agency designated to administer the policy; and (3) boundaries of this delegated authority. *American Power Co. v. S.E.C.*, 329 U.S. 90, 105, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946). Congress need only legislate so far as is reasonable and practicable, leaving for the executive branch the authority to accomplish the purpose of the statute. *Carlson v. Landon*, 342 U.S. 524, 542, 72 S.Ct. 525, 535, 96 L.Ed. 547 (1952). We may find the statute violates the constitution only if there is an absence of standards such that "it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed." *Yakus v. United States*, 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944). The Supreme Court has rarely invoked the doctrine of improper delegation to invalidate a statute. *United States v. Chambless*, 680 F.Supp. 793, 796 (E.D.La.1988) (noting that the Court has consistently upheld expansive delegations by Congress and has not applied the doctrine since 1935).

█ We have considered and reject the proposition that Congress has unconstitu-

served as special envoy to Great Britain. Associate Justice Charles Evan Hughes served on a commission to determine postal rates in 1911. Justice Robert H. Jackson was appointed American prosecutor at the Nuremberg war crimes trial in 1945. From November, 1963, until September, 1964, Chief Justice Earl Warren chaired the President's Commission on the Assassination of President Kennedy. More recently, in 1971, Judge George B. Boldt of the federal district court in Washington was appointed to serve as chairman of the pay board, an executive branch function. *See also United States v. Chambless*, 680 F.Supp. 793, 797–99 (E.D.La.1988) (setting forth numerous additional examples of extrajudicial service by Article III judges dating from 1794 to the present).

tionally delegated its authority here. Congress fully described the policies and practices by which the Commission is to function. Congress directed the Commission to effectuate those policies by promulgating guidelines for the determination of sentences. The statute provides the Commission with explicit and detailed instructions for formulating the guidelines. The Act sets sufficient standards to guide the Commission in administering its Congressional mandate.[6] This challenge to the statute's constitutionality is not persuasive.

## VI.

### DUE PROCESS

■ Defendant finally argues that the Act violates his rights to due process under the fifth amendment by depriving him of individualized sentencing by a federal judge. We disagree. Congress has the constitutional power to enact mandatory sentences, thus eliminating all judicial discretion in sentencing criminal defendants. *United States v. Grayson*, 438 U.S. 41, 45, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978). Congress may also validly prescribe minimum and maximum sentences without violating defendant's right to due process. It logically follows that Congress may provide federal judges with a range of possible sentences for crimes without violating defendant's right to due process under the law.

■ During the presentence phases of the litigation, defendant is afforded the same opportunity to be heard as he would have received under the old law. The factors normally considered by the trial judge in sentencing still are evaluated in determining the appropriate guideline to apply. The Act simply mandates that a certain weight be accorded to these factors. 28 U.S.C. § 994(e). The judge has discretion in determining the defendant's penalty within the range provided by the guidelines. Judges may depart from the guideline range if certain aggravating and miti-

gating circumstances are present. 18 U.S.C. § 3553(b). Defendant retains the right to be present during sentencing and to dispute facts relevant to his sentence. Defendant may object to conclusions in the presentence report and may present evidence to the court supporting factual contentions. Fed.R.Crim.P. 32. Moreover, the Act provides defendant with expanded rights to due process after sentence is imposed. Where a court departs from the guideline range, it must provide a written statement of reasons for applying the penalty. 18 U.S.C. § 3553. The defendant then may appeal the judge's departure from the guidelines or a perceived incorrect application of the law. 18 U.S.C. § 3742.

In summary, we find that defendants sentenced under the Act maintain the right to participate fully in all phases of the sentencing process. Although the trial court does not have unfettered discretion to impose penalties based upon its impression of the defendant in the courtroom, defendant nonetheless receives a fair and meaningful opportunity to be heard. The Constitution requires no more.

Accordingly, for the reasons set forth above, the court DENIES defendant's motion to declare the Act constitutionally invalid. We expressly hold that the Sentencing Reform Act of 1984, Title II of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837, is constitutional.

---

6. Congress' delegation of authority to the United States Parole Commission for promulgating parole guidelines has survived a similar constitutional attack. *Geraghty v. United States Parole Comm'n*, 719 F.2d 1199, 1213 (3d Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984).