DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Jackson County Common Pleas Court summary judgment in favor of Wayne Mutual Insurance Company, defendant below and appellee herein. The trial court determined that no genuine issues of material fact remained regarding whether appellee breached the insurance contract it entered into with Robert L. Jayne, Jr. and Connie M. Jayne, plaintiffs below and appellants herein, by requiring them to sign a "Medical Expenses Proof of Loss and Subrogation Assignment" form.
 {¶ 2} Appellants raise the following assignment of error for review:
"The trial court erred in granting summary judgment in favor of defendant-appellee finding that defendant-appellee did not breach its contract with plaintiffs-appellants."
 {¶ 3} In January of 2001, Robert sustained injuries in an automobile accident that Kenneth Stepp allegedly caused. At the time, Robert was an insured under appellee's policy, which provided medical payment coverage of $5,000 per person per accident.
 {¶ 4} Appellants' counsel sent a letter to appellee and listed the medical expenses incurred as a result of the accident. The expenses exceeded $5,000. Appellee responded with a letter that outlined the medical payment coverage and requested the appellants sign a "Medical Expenses Proof of Loss and Subrogation Assignment" form. The form provides:
A. "In consideration of the payment of medical expenses set forth in the Proof of Loss appearing in this agreement, I hereby:
2. Agree that the amount of such payment shall be applied toward the settlement of any claim or the satisfaction of any judgment for damages entered in my favor.
3. Represent that all expenses listed in the Proof of Loss appearing in this agreement have been incurred within one (1) year from the date of the accident listed above and that I have not been reimbursed for such expenses under the provisions of any (a) automobile or premises insurance affording benefits for medical expenses, (b) individual, blanket or group accident, disability or hospitalization insurance, (c) medical or surgical reimbursement plan or (d) any other plan or law affording similar benefits.
4. Assign, transfer and set over to Wayne Mutual Insurance Company and all claims and causes of action for medical expenses which I now have, or may hereafter, to recover against any person or organization for the causing of said medical expense, up to the amount herein paid by Wayne Mutual Insurance Company. I agree that Wayne Mutual Insurance Company may enforce the same in such manner as shall be necessary or appropriate for its use and benefit, either in its own name or in my name: and that I will furnish such papers, information or evidence as shall be within my possession or control for the purpose of enforcing such claim, demand or cause of action. I have done nothing and shall do nothing to prejudice such rights.
5. Agree to refund to Wayne Mutual Insurance Company the amount of medical expenses paid by it from any payment received from any person or organization responsible for the injuries for which the medical expenses were incurred. Until such refund is made, I will hold in trust for the benefit of Wayne Mutual Insurance Company any and all funds which I receive to which it is entitled under this Agreement.
6. Authorize any hospital, physician or other persons or groups who rendered or will render treatment to me for the injuries for which payment is being made to furnish to Wayne Mutual Insurance Company or its authorized representative any information concerning said treatment. A photocopy of this form shall be as valid as the original for this purpose."
 {¶ 5} Appellants questioned the form, specifically the subrogation assignment. In a letter to the appellee, appellants' counsel wrote:
"I have a concern that the insurance for the tortfeasor may not be sufficient to fully compensate my client/your insured. As you are no doubt aware, Ohio subscribes to the `make whole doctrine.' Under this doctrine, subrogated carriers are not entitled to payment unless and until the injured party has been made whole. By executing the requested document, you are in effect placing the interests of Wayne Mutual before or at least on equal footing with that of Robert Jayne."
 {¶ 6} Appellants' counsel requested the appellee to point out which policy provisions required appellants to execute the subrogation assignment. Appellee responded by referring to the following policy provisions: (1) paragraph 1 on pages 9-10 under "Limit of Liability"; (2) page 19 under "Our Right to Recover Payment"; (3) paragraph 2 on page 8 under "Insuring Agreement"; (4) paragraph 3 on pages 17-19 under "General Duties" and "Our Right to Recover Payment"; (5) paragraph 4 on page 19 under "Our Right to Recover Payment"; and (6) paragraph 5 on pages 17-18 of the policy under "General Duties." Appellee also provided an amended proof of loss and subrogation assignment form that included an additional paragraph that stated: "Agree that if this document and the above-referenced insurance policy differ in any way concerning the rights and obligations of the undersigned and Wayne Mutual Insurance Company the provisions of the policy control."
 {¶ 7} The relevant policy provisions concerning appellee's subrogation right and appellants' duty regarding that right provide:
A. "Part E — Duties After and Accident or Loss.
B. General Duties
C. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses. A person seeking any coverage must:
D. cooperate with us in the investigation, settlement or defense of any claim or suit;
• * * *
E. submit a proof of loss when required by us."
F. "Our Right to Recover Payment:
 {¶ 8} If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
whatever is necessary to enable us to exercise our rights; and nothing after loss to prejudice them.
• * * *
 {¶ 9} If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
hold in trust for us the proceeds of the recovery; and reimburse us to the full extent of our payment."
 {¶ 10} Appellants refused to sign the form. On November 25, 2002, the appellants filed a complaint against the appellee and Stepp that asserted a negligence claim against Stepp and a breach of contract claim against the appellee. Appellants alleged that the appellee breached the contract when it imposed conditions not specified in the insuring agreement.
 {¶ 11} On December 29, 2003, the appellee filed a summary judgment motion. It argued that the contract language allowed it to require the appellants to sign the proof of loss and that the subrogation assignment form simply permitted the appellants notice of its subrogation rights specified in the contract. Appellee thus asserted that it did not breach the contract, but only required of appellants what the contract provides.
 {¶ 12} Conversely, the appellants contended that the subrogation assignment form gave the appellee rights that the contract does not specify. Appellants argued that nothing in the contract permitted the appellee to require appellants assign all claims and causes of action for medical expenses. Appellants asserted that the form attempted to redraft the contract.
 {¶ 13} On May 11, 2004, the trial court granted summary judgment in the appellee's favor. Appellants filed a timely notice of appeal. We note that on June 21, 2004, the appellants settled their claim with the tortfeasor and dismissed their claim against him with prejudice.
 {¶ 14} In their sole assignment of error, the appellants assert that the trial court erred by granting summary judgment in favor of the appellee. They contend that the appellee breached the insurance contract by requiring them to execute a subrogation assignment. Appellants dispute the appellee's claim that the insurance contract authorizes the appellee to require the appellants to execute a subrogation assignment before they are entitled to payment under the medical payment coverage. Appellants claim that the subrogation assignment, in effect, gives the appellee a right that the parties did not bargain for and that the appellee is placing an additional condition on appellants' right to medical payment coverage. Appellants further assert that even if the appellee "did procure a right to be reimbursed, Ohio recognizes the make-whole doctrine."[1]
They assert that it is against public policy to permit an insurance carrier to recover expenses paid on the insured's behalf from the insured if the insured has not been fully compensated.
 {¶ 15} Appellee asserts that the insurance contract provides it with a right of subrogation and that the form simply provides notice to the insured of its subrogation rights. Appellee notes that the contract specifically requires the appellants to reimburse the appellee to the full extent of its payment if the appellants recover damages from another. Appellee additionally argues that because the appellants settled with the tortfeasor, the case is moot.
 {¶ 16} We first must consider whether the case before us presents a case or controversy or, instead, an abstract question not currently capable of judicial review. See, e.g., Babbitt v.United Farm Workers Nat. Union (1979), 442 U.S. 289, 297,99 S.Ct. 2301, 60 L.Ed.2d 895; Muskrat v. United States (1911),219 U.S. 346, 356, 31 S.Ct. 250, 55 L.Ed. 246. "[C]ourts decide only cases or controversies between litigants whose interests are adverse to each other, and do not issue advisory opinions."State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999),86 Ohio St.3d 451, 524-525, 715 N.E.2d 1062 (Moyer, J., dissenting). An appellate court's duty "is to decide actual controversies between parties and to enter judgments capable of enforcement." State v. Bistricky (1990), 66 Ohio App.3d 395,397, 584 N.E.2d 75. "For a cause to be justiciable, there must exist a real controversy presenting issues that are ripe for judicial resolution and that will have a direct and immediate effect on the parties." Sheward, 86 Ohio St.3d at 525 (citingBurger Brewing Co. v. Liquor Control Comm. (1973),34 Ohio St.2d 93, 97-98, 296 N.E.2d 261).
 {¶ 17} "The difference between an abstract question and a
`case or controversy' is one of degree, * * * and is not discernible by any precise test." Babbitt, 442 U.S. at 297. "The basic inquiry is whether the `conflicting contentions of the parties * * * present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Id. at 298 (quotingRailway Mail Assn. v. Corsi (1945), 326 U.S. 88, 93,65 S.Ct. 1483, 89 L.Ed. 2072).
"`By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party * * * takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication.'"
 {¶ 18} Muskrat, 219 U.S. at 357 (quoting Re Pacific R.Commission, 32 Fed. 241, 255). The essence of what constitutes a case or controversy rather than an advisory opinion or abstract question is "the settling of some dispute which affects the behavior of the defendant towards the plaintiff." Hewitt v.Helms (1987), 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654; see, also, Rhodes v. Stewart (1988), 488 U.S. 1, 4,109 S.Ct. 202, 102 L.Ed.2d 1. A case or controversy is lacking and the case is moot "`when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" LosAngeles v. Davis (1979), 440 U.S. 625, 631, 99 S.Ct. 1379,59 L.Ed.2d 642 (quoting Powell v. McCormack (1969), 395 U.S. 486,496, 89 S.Ct. 1944, 23 L.Ed.2d 491); see, also, Erie v. Pap'sA.M. (2000), 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265.
 {¶ 19} We believe that the case before us no longer presents a case or controversy and, thus, is moot. At oral argument, the appellants admitted that they have received full compensation from the tortfeasor for their injuries. They settled their claim against the tortfeasor. Because they have received full compensation and have settled their claim against the tortfeasor, they extinguished their claim for medical expenses against the appellee. Without a claim against the appellee and without the appellee having paid any of appellants' medical expenses, appellants' breach of contract claim is moot. Thus, we cannot issue a judgment that would affect appellee's behavior toward appellants. Appellants do not have a legally cognizable interest in the outcome and any relief we granted would be hypothetical only.
 {¶ 20} Accordingly, based upon the foregoing reasons, we hereby dismiss the instant appeal.
Appeal dismissed.
 JUDGMENT ENTRY
It is ordered that the appeal be dismissed and that appellee and appellants equally share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion
[1] We note that on September 29, 2004, six days after the parties presented their oral arguments in this matter, the Ohio Supreme Court clarified the ability of an insured and a healthbenefits provider to, by agreement, avoid the application of the make-whole doctrine. In Northern Buckeye EducationalCouncil Group Health Benefits Plan v. Lawson,103 Ohio St.3d 188, 2004-Ohio-4886, the syllabus provides:
"1. A provider of health-insurance benefits and an insured who has been injured by an act of a third party may agree prior to payment of medical benefits that the insured will reimburse the insurer for any amounts later recovered from that third party, third party's insurer, or any other person through settlement or satisfaction of judgment upon any claims arising from the third party's act. A clear and unambiguous agreement so providing is not unenforceable as against public policy, irrespective of whether the settlement or judgment provides full compensation for the insured's total damages.
2. A reimbursement agreement between an insured and a health-benefits provider clearly and unambiguously avoids the make-whole doctrine if the agreement establishes both (1) that the insurer has a right to a full or partial recovery of amounts paid by it on the insured's behalf and (2) that the insurer will be accorded priority over the insured as to any funds recovered."
Thus, the court, noting that courts should not rewrite contracts, clarified its earlier decision in Blue Cross BlueShield Mut. of Ohio v. Hienko (1995), 72 Ohio St.3d 120,647 N.E.2d 1358.