OPINION
{¶ 1} Appellant, Nationwide Assurance Company, appeals the entry of judgment in favor of Appellees, Janice M. and Kenneth E. Snider, following a jury trial on Appellees' breach of contract claim. Appellees are insureds under an Ohio Automobile Policy ("Policy") issued by Nationwide.
 {¶ 2} On April 7, 2002, Appellees were involved in an automobile accident. Janice Snider was taken to an emergency room where she incurred several thousand dollars in medical bills. As a consequence, she sought to recover $1,000.00 from Nationwide based upon the policy limits of the medical payments provision in the policy.
 {¶ 3} The provision reads, in its entirety, "We will pay for reasonable expenses actually incurred within one year from the date ofaccident for necessary medical and funeral services because ofbodily injury suffered by an insured person." (Emphasis in original). (Policy, p. 9.)
 {¶ 4} In order to process her claim, Nationwide instructed Appellee to complete several forms, including a proof of claim form, a subrogation form, and a medical authorization form, and to provide copies of her medical bills to the company. In a letter dated May 29, 2002, Appellees' attorney, James Bordas, represented that he had enclosed copies of medical bills and the completed authorization form, but he refused to complete the remaining forms because they were "overly broad." (5/29/02 Letter from James Bordas to Christine Vidic.)
 {¶ 5} At trial, Kenneth Snider read this Bordas letter into evidence. Although in the letter Atty. Bordas indicated that he had enclosed copies of Appellees' medical *Page 2 
bills with his correspondence, Kenneth Snider stated that no medical bills were attached to the letter. (Partial Trial Tr., p. 62.) Nationwide's expert, George Krauss, testified that copies of the medical bills were not provided to Nationwide until 2003. (Partial Trial Tr., p. 97.)
 {¶ 6} Atty. Bordas requested payment for a second time on June 28, 2002, but Nationwide did not respond to his request. (Partial Trial Tr., pp. 115-117.) Nationwide attributed the oversight to a change in personnel at the company. The original agent assigned to Appellees' claim left Nationwide in November of 2002, and, at some point, the file was assigned to another claims agent. (Partial Trial Tr., pp. 116-117.)
 {¶ 7} The new claims agent sent a second set of forms to Janice Snider, despite the fact that she was represented by counsel, on January 16, 2003. (Partial Trial Tr., p. 117.) The second request included the forms that were previously sent plus an additional form requesting employment information, and an affidavit disclosing other insurance policies covering health, sickness, and disability coverage. (Partial Trial Tr., pp. 118, 121.)
 {¶ 8} Despite numerous requests by Nationwide for the completed forms, Janice Snider never submitted them. Despite numerous demands by Appellees for payment, Nationwide did not provide the proceeds of the medical payment coverage. However, counsel for Appellees conceded that Nationwide never actually denied the claim. *Page 3 
 {¶ 9} On April 15, 2003, Appellees brought the above-captioned action against Nationwide alleging breach of contract and bad faith. In its answer, Nationwide argued that Appellees' breach of the cooperation clause excused the company's performance under the policy. The cooperation clause requires that insureds assist the company by providing information about the claim, and authorizing the company to acquire information about the claim. (Policy, pp. 2-3.)
 {¶ 10} The trial court bifurcated the causes of action. At some point during the pendency of this action, Appellees filed suit against the tortfeasor, Patsy Jacks, in a separate action, Snider v. Jacks, 03CV473. The trial court denied Nationwide's motion in the case sub judice to consolidate the two actions.
 {¶ 11} On December 6, 2004, Appellees filed a motion for summary judgment claiming that Nationwide's failure to pay the policy proceeds was a breach of contract, and that their failure to complete the requested forms did not constitute a material breach of the contract. The trial court denied the motion.
 {¶ 12} With a June 13, 2006 trial date looming, the discovery deadline was extended in this case to allow Nationwide to depose Janice Snider. Although Nationwide, in its request for documents, specifically requested that Appellees provide copies of all releases, settlement checks, or documentation regarding settlement of the Jacks' litigation, Nationwide did not learn that the Jacks' litigation had been settled on May 4, 2005, until Janice Snider disclosed the information at her April, 2006, deposition. (Partial Trial Tr., p. 50.) *Page 4 
 {¶ 13} On May 12, 2006, Nationwide filed a motion for leave to file a summary judgment motion (the dispositive motion deadline had passed), based upon the argument that Appellees prejudiced Nationwide's subrogation rights by releasing the tortfeasor, thus excusing the company from providing payment under the policy. The summary judgment motion was premised upon a provision in the policy that required insureds to obtain Nationwide's written consent to settle any legal action brought against any liable party or to release such a party. The provision also required that insureds preserve and protect Nationwide's subrogation rights. (Policy, p. 7.)
 {¶ 14} The trial court denied Nationwide's motion for leave to file its summary judgment motion based upon the new information, because the case was, "simply too close to the Trial date to reopen for purposes of Summary Judgment." (06/12/06 J.E., p. 1.) However, the trial court instructed Nationwide that it could assert the prejudice argument at trial.
 {¶ 15} At trial, Appellees argued that their refusal to complete the subrogation form did not constitute a breach of the cooperation clause, because the subrogation form required Janice Snider to contract away rights that were not included in the policy. For instance, the subrogation form reads, "[a]ny attorney representation of our subrogated interest requires our written approval." (Partial Trial Tr., p. 95.) Krauss conceded on cross-examination that "[t]hat specific language" was not in the policy. (Partial Trial Tr., p. 96.) He further conceded that Nationwide's authority to accept or reject an attorney chosen by Appellees was a right not included in the policy. (Partial Trial Tr., pp. 96-97.) *Page 5 
 {¶ 16} Based upon notations in the claims file, Kraus also conceded that Nationwide was aware that Janice Snider did not have any other health insurance from the first day the company opened the claim file, and that Nationwide ultimately concluded that she had a valid claim under the medical payments plan. (Partial Trial Tr., pp. 120-122.)
 {¶ 17} Both sides moved for a directed verdict. Appellees' counsel reasserted the arguments advanced in their motion for summary judgment. Counsel for Nationwide argued that Appellees' medical payments claim was moot because Appellees had been fully compensated for Janice Snider's injuries by the tortfeasor. (Partial Trial Tr., 149.) In the alternative, counsel for Nationwide asserted that, in the event of a verdict in favor of Appellees, Nationwide would be entitled to reimbursement pursuant to the "Trust Agreement" provision of the policy. That provision requires that an insured who receives insurance proceeds pursuant to the medical payments provision, then recovers damages for the medical payments from the tortfeasor, must repay Nationwide. (Policy, p. 10.) Both motions were denied by the trial court.
 {¶ 18} The jury returned a verdict in favor of Appellees in the amount of $1,000.00. The jury provided affirmative responses to the first two special interrogatories and a negative response to the third:
 {¶ 19} "(1) Do you find that the Defendant, Nationwide Assurance Company, breached its insurance contract with the Plaintiff, Janice M. Snider? *Page 6 
 {¶ 20} "(2) Do you find that the Plaintiffs cooperated with the Defendant, Nationwide Assurance Company, in connection with their claim?
 {¶ 21} "(3) Do you find that the Plaintiffs' failure to provide Defendant with Notice of their settlement with the tortfeasor (liability party) caused material prejudice to the Defendant, Nationwide Insurance [sic] Company, by interfering with its subrogation rights pursuant to the terms of the insurance contract?"
 {¶ 22} On July 26, 2006, Nationwide filed its motion for judgment notwithstanding the verdict, or, in the alternative, a new trial. Nationwide argued that Appellees' failure to notify the company about the Jacks' settlement constituted a material breach of the insurance contract, and that the breach excused Nationwide's performance as a matter of law. In a judgment entry dated July 12, 2007, the trial court denied the motion and dismissed the remaining claims pursuant to Civ. R. 41(A)(2). This timely appeal followed.
 {¶ 23} It is important to note, here, that this appeal solely concerns Appellees' breach of contract claims. Appellees' initial bad faith claims were not tried and are not at issue, here.
 {¶ 24} Nationwide asserts four assignments of error, however, the second assignment of error will be addressed first, as it goes to the justiciability of the breach of contract claim and resolves the appeal.
 Assignment of Error No. 2: *Page 7 {¶ 25} "APPELLEES' SETTLEMENT WITH THE TORTFEASOR IN MAKING A FULL AND FINAL SETTLEMENT OF ALL CLAIMS, INCLUDING MEDICAL EXPENSE CLAIMS, RENDERS APPELLEES' MED PAY CLAIM MOOT."
 {¶ 26} Nationwide argues that the facts in this case are analogous to the facts in Jayne v. Wayne Mutual Ins. Co., 4th Dist. No. 04CA9,2004-Ohio-6934. Mr. Jayne was injured in a car accident and sought to recover insurance proceeds under the medical payment provision in his automobile policy. Id. at ¶ 3. As a part of the claims procedure, the insurance company instructed him to complete a medical expenses proof of loss and subrogation assignment form. Id. at ¶ 4. Counsel for the Jaynes refused to complete the form, claiming that it required them to surrender rights not included in the contract of insurance. Id. at ¶ 10.
 {¶ 27} The Jaynes filed a complaint asserting a breach of contract by the insurance company and negligence by the alleged tortfeasor. The Jaynes argued that the insurance company breached the contract when it imposed conditions not specified in the insuring agreement. Approximately one month after the trial court entered summary judgment in favor of the insurance company, the Jaynes settled their claim against the tortfeasor and dismissed the negligence claim with prejudice.
 {¶ 28} Before addressing the sole assignment of error, the Fourth District Court of Appeals first considered whether the case presented a case or controversy or an abstract question not currently capable of judicial review. After examining the relevant law, the Court concluded that, "[b]ecause [the Jaynes] have received full *Page 8 
compensation and have settled their claim against the tortfeasor, they extinguished their claim for medical expenses against [the insurance company.]" Id. at ¶ 19.
 {¶ 29} The same is true in the case sub judice. "In order to recover on a claim of breach of contract, the plaintiff must prove (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff." Price v.Dillon, 7th Dist. Nos. 07-MA-75, 07-MA-76, 2008-Ohio-1178, ¶ 44.
 {¶ 30} Appellees conceded at oral argument that Janice Snider was fully compensated on May 4, 2005 for the loss that she sustained in the auto accident at issue in this case. Therefore, she could not establish the essential element of damage or loss at trial, and the trial court erred as a matter of law when it denied Nationwide's motion for a directed verdict. Like the insureds in Jayne, supra, Appellees extinguished their breach of contract claim once they were fully compensated by the tortfeasor.
 {¶ 31} Even assuming arguendo that Appellees could have established Nationwide's breach of contract at trial, the $1,000.00 judgment would be subject to the trust provisions of the insurance contract. In other words, Appellees would have to repay the $1,000.00 to Nationwide because their damages have already been compensated by the tortfeasor.
 {¶ 32} In an effort to avoid a Pyrrhic victory, Appellees contend that Nationwide waived its rights under the subrogation and trust provisions of the insurance contract by effectively denying Appellee's medical payments claim. *Page 9 
Essentially, Appellees argue that they should be permitted a "double recovery" as a result of Nationwide's bad faith. However, as earlier stated, Appellees' bad faith claim was not an issue at trial and is not currently before us. Consequently, while the bulk of Appellees' arguments go towards their efforts at asserting evidence of bad faith, by law, this cannot save their breach of contract claim. The breach of contract claim must fail because Appellees' own actions have extinguished their "damage" portion of this claim, an essential element.
 {¶ 33} Nationwide raises three additional assignments of error. Essentially, Nationwide contends that the trial court misapplied Ohio subrogation law when instructing the jury, and when ruling on the motion for directed verdict and for judgment notwithstanding the verdict. Nationwide also claims that the jury verdict was contrary to manifest weight of the evidence. However, as we have resolved Nationwide's second assignment of error in the company's favor, the remaining assignments of error are moot.
 {¶ 34} Insofar as Janice Snider was fully compensated for her injuries by the torfeasor, Appellees cannot establish an essential element of their breach of contract claim. Consequently, Nationwide's second assignment of error is sustained. The judgment of the trial court is reversed and judgment is entered in favor of Nationwide.
Donofrio, J., concurs.
DeGenaro, J., concurs. *Page 1